1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANA VALENCIA, an individual, on behalf of all persons similarly situated on behalf of the State of California, as a private attorney general, and on behalf of all aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br><br>VF OUTDOOR, LLC, a California limited liability company, and DOES 1 to 50, inclusive,<br><br>Defendant. | No. 1:20-cv-01795-ADA-SKO<br><br>FINDINGS AND RECOMMENDATIONS TO DENY MOTIONS TO STRIKE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>(Doc. 65, 74, 75)<br><br>**14-DAY DEADLINE** |

21
22
23
24
25
26
27
28

Before the Court is Plaintiff Briana Valencia ("Plaintiff")'s motion to for class certification and appointment of class counsel (the "Class Certification Motion") (Doc. 65), filed November 15, 2021, and related motions.[1]  Defendant VF Outdoor, LLC ("Defendant" or "VF Outdoor") filed its opposition on January 31, 2022.  (Doc. 71.)  On February 14, 2022, Plaintiff filed her reply, along with a motion to strike five video files submitted in support of Defendant's opposition to the Class Certification Motion ("Plaintiff's Motion to Strike").  (Docs. 73 & 74.)  On February 22, 2022,

---

[1] The motion was referred to the undersigned magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b).  (*See* Doc. 43-2 at 3.)

1

Defendant filed its opposition to Plaintiff's Motion to Strike, in addition to filing its own motion to strike Plaintiff's reply in support of the Class Certification Motion ("Defendant's Motion to Strike"). (Docs. 75 & 77.) On March 9, 2022, Plaintiff filed her opposition to Defendant's Motion to Strike. (Doc. 79.) Plaintiff and Defendant filed their replies in support of their motions to strike on March 14, 2022, and March 16, 2022, respectively. (Docs. 80 & 81.) The undersigned reviewed the motions, oppositions, replies, and all supporting papers, and found the matter suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g). The hearing set for March 23, 2022, was therefore vacated. (Doc. 82.)

For the reasons set forth below, the undersigned will recommend that: (1) Plaintiff's Motion to Strike be denied; (2) Defendant's Motion to Strike be denied as moot; and (3) Plaintiff's Class Certification Motion be denied based on the classes as defined and proposed to be represented by Plaintiff Briana Valencia in the motion.

## I.   BACKGROUND

### A.   Procedural Background

On August 27, 2019, Plaintiff filed this putative class and representative action in Alameda County Superior Court, alleging: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide rest periods; (4) failure to provide meal periods; (5) failure to pay wages owed in a timely manner; (6) failure to provide accurate wage statements; (7) unfair business practices in violation of California's Unfair Competition Law; and (8) penalties under the Private Attorneys General Act. (*See* Doc. 1-1 at ¶¶ 71–157.)

On October 28, 2019, Defendant removed the action to federal court, invoking jurisdiction under the Class Action Fairness Act. (Doc. 1.) Defendant then filed a motion to transfer the action to this Court, which was granted on December 17, 2020. (Docs. 31 & 41.)

On September 3, 2021, Defendant filed a motion to deny class certification, contending that Plaintiff cannot meet the prerequisites of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because she did not sign a "pre-dispute arbitration agreement" (the "Arbitration Agreement"), whereas most of the putative class members have. (Doc. 53.) The Court granted Defendant's

1  motion to deny class certification based on the classes defined and proposed to be represented by

2  Plaintiff in the complaint, finding that Plaintiff lacks typicality and adequacy pursuant to Rule 23

3  with respect to the putative class members who signed the Arbitration Agreement.  (Docs. 64, 68.)

4          On November 15, 2021, Plaintiff filed the Class Certification Motion, which is now pending

5  before the Court, seeking to represent a classes of employees who did not sign the Arbitration

6  Agreement.  (Doc. 65.)  Plaintiff ultimately seeks to certify classes under Fed. R. Civ. P. 23

7  comprised of:

8          a.   all individuals who are or were employed by VF Outdoor, LLC, or its
              predecessor or merged entities in California as hourly, non-exempt
9             employees, who were employed at one of VF Outdoor LLC's distribution
              centers in California, who did not sign an arbitration agreement with VF
10            Outdoor LLC, and who were required by VF Outdoor LLC to undergo pre-
              shift and post-shift security checks between August 26, 2015 and the present
11            date ("Unpaid Time Class");

12         b.   all individuals who are or were employed by VF Outdoor, LLC, or its
              predecessor or merged entities in California as hourly, non-exempt
13            employees, who were employed at one of VF Outdoor LLC's distribution
              centers in California, who did not sign an arbitration agreement with VF
14            Outdoor LLC, and who were required by Defendant to undergo pre-shift and
              post-shift security checks and who work or worked in excess of eight hours
15            in a day or forty hours in a workweek between August 26, 2015 and the
              present date ("Overtime Class");
16

17         c.   all individuals who are or were employed by VF Outdoor, LLC, or its
              predecessor or merged entities in California as hourly, non-exempt
18            employees, who were employed at one of VF Outdoor LLC's distribution
              centers in California, who did not sign an arbitration agreement with VF
19            Outdoor LLC, and who were required by Defendant to undergo pre-shift and
              post-shift security checks and who work or worked shifts in excess of five
20            hours between August 26, 2015 and the present date ("Meal Period Class");

21         d.   all individuals who are or were employed by VF Outdoor, LLC, or its
              predecessor or merged entities in California as hourly, non-exempt
22            employees who work or worked shifts in excess of three and a half hours
              between August 26, 2015 and the present date who were employed at one of
23            VF Outdoor LLC's distribution centers in California, who did not sign an
              arbitration agreement with VF Outdoor LLC, and who were required by
24            Defendant to undergo pre-shift and post-shift security checks ("Rest Period
              Class"); [and]

25         e.   all individuals who are or were employed by VF Outdoor, LLC, or its
              predecessor or merged entities in California as hourly, non-exempt
26            employees from between August 26, 2018 and the present date who did not
              sign an arbitration agreement with VF Outdoor LLC, and who were required
27            by Defendant to undergo pre-shift and post-shift security checks and who
              work or worked shifts in excess of five hours between August 26, 2015 and
28            the present date ("Wage Statement Subclass").

1  (Doc. 65 at 1–2; Doc. 65-1 at 1–2.)[2]

2  **B.  Factual Background**

3  Defendant VF Outdoor is an apparel, footwear, and accessories company that owns and

4  distributes a number of clothing brands, including "Vans," "Timberland," "The North Face,"

5  "Dickies," and "Jansport." (Doc. 71-4, Declaration of David Wood ("Wood Decl.") at ¶ 2; Docs.

6  65-10 & 71-3, Deposition of David Wood ("Wood Dep.") at 28:7–9.) Defendant has four

7  distribution centers in California, located in Visalia, Ontario, Corona, and Santa Fe Springs. (Wood

8  Decl. at ¶ 3; Wood Dep. at 11:1–8.) Each distribution center operates independently of the others,

9  and each management team has broad discretion in operating the distribution center so long as they

10 follow VF Outdoor's policies and procedures. (Wood Decl. at ¶ 5.) Hourly, non-exempt employees

11 are employed in a variety of positions at each distribution center. (Wood Decl. at ¶ 4.)

12 Plaintiff is currently employed as an hourly, non-exempt employee at its distribution center

13 in Visalia. (Doc. 65-4, Declaration of Plaintiff ("Plaintiff Decl.") at ¶ 2.) Plaintiff alleges that

14 Defendant requires its employees, upon arrival and prior to clocking-in, to undergo a "security

15 check wherein their bags are searched" and thereafter walk to their assigned workstations. (Doc.

16 1-1 ¶ 25; Doc. 65-1 at 3–4.) Plaintiff also alleges that Defendant requires its employees, after

17 clocking-out for the day or for a meal period, to walk to the front of the building and undergo a

18 "post-shift security check." (Doc. 1-1 at ¶ 26; Doc. 65-1 at 3–4.) According to Plaintiff, these two

19 processes take approximately 20 minutes each for employees to complete, for which they are not

20 compensated. (Plaintiff Decl. at ¶¶ 25–26; Doc. 65-1 at 3–4.)

21 1.  Defendant's Security Check Procedures

22 *a. Visalia*

23 VF Outdoor employs approximately 600 employees, depending on the season, at the Visalia

24 distribution center ("Visalia"). (Wood Dep. at 11:16–20, 39:18–40:1.) David Wood, the Senior

25 Manager of Human Resources/Loss Prevention at VF Outdoor, oversees the human resources,

26 safety, and security departments at this facility. (*Id.* at 10:17–22; Wood Decl. at ¶ 1.) Visalia is

27

28
[2] There appears to be a scrivener's error in the Wage Statement Subclass. The start date of the proposed class period is identified as "August 26, 2018," whereas for all of the other proposed classes, the start date is "August 26, 2015."

comprised of one building and is approximately 800,000 square feet.  (Wood Dep. at 37:5–6, 35:22–25.)  There is a single entrance at which employees may enter and exit.  (Wood Decl., Ex. A.)  Upon entering Visalia, employees pass by a security stand[3] and walk down a hallway to a set of doors that open into a warehouse.  (*Id.*)  Employees with a bag are required to undergo a security check that involves displaying the contents of the bag.  (Wood Dep. at 20:20–21:9; Docs. 71-2 & 73-3, Deposition of Plaintiff ("Plaintiff Dep.") at 56:16–23; Plaintiff Decl. at ¶ 3.)

Within the warehouse, there are multiple locations where time clocks are stationed.  (Wood Decl., Ex. A; Wood Dep. 22:9–13.)  Employees were required to clock in using the time stations in their department; they were not allowed to use the time stations at the front of the warehouse.  (Plaintiff Dep. at 78:9–15.)  Plaintiff's department was located at the back of the warehouse, approximately 450 yards from the facility entrance, so the process of entering the building, undergoing the security check, and walking to the appropriate time clock would take approximately five to ten minutes.  (Plaintiff Dep. at 93:2–14; Plaintiff Decl. at ¶¶ 2, 3; Wood Dep. at 55:4–7, 90:19–23.)  After Plaintiff filed the instant lawsuit in 2019, the manager of Visalia informed the employees they could use any of the time clocks in the warehouse, including those by the front doors, though security checks still occurred before employees clocked in.  (Plaintiff Dep. at 76: 17–23, 77:20–78:8; Plaintiff Decl. at ¶ 8.)  In October 2020, additional timeclocks were installed at the entrance of the facility (as opposed to inside the warehouse), within 15 feet, and employees clocked in before undergoing the security check upon entry and clocked out after the check upon exiting.  (Plaintiff Dep. at 80:8–20; Plaintiff Decl. at ¶ 8; Wood Dep. at 22:22–23:1, 24:15–25, 52:16–21, 54:17–24.)

### b.   Corona

VF Outdoor commenced operations at the Corona distribution center ("Corona") in 2018.  (Wood Decl. at ¶ 3.)  Approximately 100 employees are employed at Corona.  (Wood Dep. at 11:24–25, 40:9–18.)  The distribution center is comprised of one building and is approximately 300,000 square feet.  (Wood Dep. at 39:13–17.)  All employees enter and exit from one entrance.

---

[3] The security desks at all of Defendant's California distribution centers are staffed by a third party, Securitas.  (Wood. Dep. at 49:14–23.)

(Wood Dep. at 39:7–9.)  The facility has a security desk near the entrance.  (Doc. 65-17, Declaration of James Treglio ("Treglio Decl."), Ex. I (Diagrams of Corona Distribution Center).)  Time clocks were located in the breakroom.  (*Id.*)  Upon exiting the facility, employees with a bag were required to undergo a security check that involved displaying the contents of the bag; there were no security checks upon entry.  (Wood Dep. at 34:5–13.)  Security checks were conducted after employees clocked out until October 2020, at which time the policy changed so that employees were to undergo the check before clocking out.  (*Id.* at 34:10–13.)  At that time, additional time clocks were installed in the facility, with one more in the breakroom, and three new ones  within 15 feet of the building entrance.  (Treglio Decl., Ex. I; Wood. Dep. at 36:4–16.)

### c.  Santa Fe Springs

VF Outdoor employs approximately 500 employees at the Santa Fe Springs distribution center ("Santa Fe Springs").  (Wood Dep. at 12:1–2, 38:12–13, 40:2–5.)  Anna Gallegos oversees the human resources department at this facility.  (*Id.* at 15:3–7.)  Santa Fe Springs is comprised of two buildings and is approximately 500,000 square feet.  (*Id.* at 37:8–21; Doc. 65-18, Treglio Decl., Ex J (Diagrams of Santa Fe Springs Distribution Center).)  Prior to October 2020, there were two entrances from which employees could enter and exit the facility.  (Treglio Decl., Ex. J.)  From October 2020 to present, there are five entry points and four exit points for employees.  (*Id.*)  The time-clock stations are located near each entrance.  (*Id.*)  Prior to 2020, the time clocks were located past the security desk; after July or August 2020, the time clocks were moved so that employees can clock in before passing the security desk.  (Doc. 73-5, Deposition of Brooke Freedman ("Freedman Dep.") at 29:17–30:11.)

Employees with a bag are required to undergo a security check upon exiting the facility that requires displaying the contents of the bag; no security checks are conducted upon entry.  (Wood Dep. at 28:14–29:22; 52:16–53:5.)  Prior to October 2020, employees underwent exit security checks after they clocked out.  (Treglio Decl., Ex. J; Wood Dep. at 29:23–30:12.)  From October 2020 to present, employees undergo exit security checks before they clock out.  (Treglio Decl., Ex. J; Wood Dep. at 28:14–17.)

///

### d. Ontario

VF Outdoor employs approximately 100 employees at the Ontario distribution center ("Ontario"). (Wood Dep. at 12:5–8; 40:6–8.) Alma Rodriguez oversees the human resources department at this facility. (*Id.* at 15:12–14.) Ontario is comprised of one building and is approximately 300,000 square feet. (*Id.* at 38:17–20, 39:2–6.) All employees enter and exit from one entrance. (*Id.* at 38:21–39:1.) The facility has a security desk near the entrance. (Doc. 73-4, Deposition of Alma Rodriguez ("Rodriguez Dep.") at 19 at 8–13; Wood Dep. 32:10–12; Wood Decl., Ex. B.) As employees walk into the facility and past the security desk, the guard looks to make sure employees have their badge to confirm that they are authorized to be in the building. (Rodriguez Dep. at 20:15–21:1, 28:3–8.) Employees do not stop for any security check upon entering the facility. (Rodriguez Dep. at 20:25–21:1, 21:12–21; Wood Dep. at 30:15–19; Wood Decl., Ex. D (Video of Security Check at Ontario Distribution Center).) Upon exiting the facility, employees were required to undergo a visual bag check. (Wood Dep. at 30:20–23, 32:13–32.) The time clocks were located outside of the break room on the distribution center floor, which was approximately 20 feet from the facility entry.[4] (Rodriguez Dep. at 16:3–15; Wood Dep. at 31:4–19.) At some point in 2020, at the direction of Defendant's corporate office, the time clocks were moved closer to the facility entrance, within 10 feet.[5] (Rodriguez Dep. at 16:16–18, 17:9–21, 28:15–23; Wood Dep. at 31:25–32:12; Freedman Dep. at 23:23–24:17.)[6] In October 2020, all bag checks were eliminated at Ontario. (Wood Dep. at 33:3–25, 96:7–13.)

### 2. Defendant's Meal Period and Rest Break Policies

Defendant maintains meal and rest period policies for its employees. (Wood Dep. at 85:9–18.) Employees are provided with one 45-minute meal period and two 15-minute rest periods per

---

[4] Mr. Wood testified that the time clocks were 20 yards, rather than feet, from the facility entry. (Wood Dep. at 31:4–19.)

[5] Mr. Wood testified that after the time clocks were moved, they were six to ten yards from the front door. (Wood Dep. 31:25–32:12.)

[6] Brooke Freedman, who was the Director of Human Resources West Coast Fulfillment for VF Outdoor, testified that, in July or August 2020, all of Defendant's California operations had been asked by Defendant's "safety teams" to move their time clocks at the distribution centers closer to the front entrance at each facility. (Freedman Dep. at 23:23–27:19.)

1   eight-hour shift, with employees required to clock out before taking their meal or break.[7]  (Plaintiff

2   Dep. at 43:17–44:4, 45:13–19, 52:7–13; Rodriguez Dep. at 25:10–14.)   Employees   undergo

3   security checks, to the extent they are required at the distribution center, during their meal or rest

4   periods only if they leave the facility.  (Wood Dep. at 43:4–15; Plaintiff Dep. at 68:4–9.)  There is

5   at least one break room within each distribution center for employees to take meal and rest periods

6   without having to go through a security check.  (Treglio Decl. Exs. I & J; Wood Decl., Exs. A &

7   B.)

8           Plaintiff has left Visalia on meal periods, driving to nearby fast-food restaurants.  (Plaintiff

9   Dep. at 60:14–25.)   She would spend approximately 30 minutes away from the facility, or

10  sometimes longer, depending on how busy the restaurant was, taking about 10 minutes to drive to

11  the restaurant, 10 minutes to eat there, and 10 minutes to drive back.  (*Id.* at 60:18–25, 66:12–67:7.)

12  Plaintiff has been able to take a meal period of 30-minutes consistently throughout her employment

13  with Defendant.  (*Id.* at 68:15–18.)

14          Plaintiff has also left Visalia during her rest periods several times to retrieve personal items

15  from her vehicle.  (Plaintiff Dep. at 50:15–51:12.)  Otherwise, she spends her rest periods inside of

16  the distribution center in the breakroom.  (*Id.* at 67:14–19.)  In all the times she exited the facility

17  during her rest period, Plaintiff has never had to stop for a security check because she did not have

18  a bag.  (*Id.* at 57 at 4–16.)  Plaintiff has consistently taken two 15-minute rest periods throughout

19  her employment with Defendant.  (*Id.* at 68:10–14.)

20                          **II.       MOTIONS TO STRIKE**

21          As a preliminary matter, Plaintiff moves to strike five videos submitted in support of

22  Defendant's opposition to the Class Certification motion (Doc. 74), and Defendant moves to strike

23  "new evidence" and arguments raised for the first time in Plaintiff's reply in support of the Class

24  Certification Motion (Doc. 75).  The Court addresses each motion in turn.

25  ///

26

27  [7] According to Defendant, more specifically, its meal period policy provides for "a 45 [minute] duty-free, uninterrupted
    meal period for shifts greater than five hours unless there is a proper meal period waiver," and its rest period policy
    provides for "two 15-minute paid, duty-free uninterrupted rest periods for each eight-hour shift," citing to Exhibit 7 of

28  Mr. Wood's deposition transcript.  (Doc. 71 at 8, 9.)  This exhibit, however, was not provided to the Court.

### A.    Plaintiff's Motion to Strike

In support of its opposition to the Class Certification Motion, Defendant submitted five video files containing footage of the security checks at Defendant's distribution facilities in California (the "Videos").  (Docs. 71-7, 71-8, 71-9, 71-10, Wood Decl. Exs. C, D, E, F.)  Plaintiff contends that Defendant failed to identify the Videos in its initial disclosures or as a supplement, as required by Federal Rule of Civil Procedure 26(a) and (e).  (Doc. 74 at 3–4.)  Plaintiff therefore moves to strike the Videos pursuant to Federal Rule of Civil Procedure 37(c)(1).  (*Id.*)

Defendant opposes Plaintiff's Motion to Strike, asserting that Defendant "fully complied with the spirit and text of [Rule 26]," as it provided the Videos to Plaintiff as soon as they were in Defendant's possession.  (Doc. 77 at 6.)  Defendant further contends that any delay in its production of the Videos is harmless because "Plaintiff could have addressed the [V]ideos in her reply brief, requested that the Court allow her leave to file a supplemental response to the evidence, or provide argument at the scheduled hearing for [the Class Certification Motion]."  (*Id.* at 7.)

Rule 26(a) governs initial disclosures, requiring in part parties to disclose any information or documents "that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses" at the outset of a civil suit.  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Rule 26(e) requires a party to supplement or correct its initial disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Under Rule 37(c), a party that fails to properly disclose evidence may not "use that information to supply evidence on a motion, at hearing, or at trial," unless the failure to disclose was "substantially justified or is harmless."  *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008).

Here, even assuming that Defendant failed to comply with Rule 26, the Court finds that the delay in the production of the Videos was harmless.  According to Defendant, it requested security check footage from the Santa Fe Springs, Ontario, and Corona distribution centers after January 24, 2022, the date of Plaintiff's deposition, and at which Defendant "confirmed Plaintiff's proposed

1    classes for class certification." (Doc. 77 at 2, 5, Doc. 77-1, Declaration of Lonnie D. Giamela

2    ("Giamela Decl.") at ¶ 5.) Defendant avers that it provided Plaintiff with the Videos "as soon as

3    [Defendant] had all of them in its possession[,]" on January 31, 2022—which is also the date

4    Defendant's opposition to the Class Certification was due.[8] (Doc. 77 at 2, 5; Giamela Decl. at ¶ 5.)

5    As Defendant contends (*see* Doc. 77 at 2, 7), the Videos were provided in advance of Plaintiff's

6    deadline to file her reply brief in support of the Class Certification Motion, and Plaintiff thus had

7    an opportunity to address the Videos in her reply brief. *See, e.g.*, *Johnson v. Holms*, No. 2:18-CV-

8    00647-GMN-EJY, 2021 WL 4268432, at \*8 (D. Nev. Sept. 20, 2021) (finding the plaintiff's failure

9    to disclosure exhibits harmless and denying motion to strike because the defendants "had an

10    opportunity to respond to [the plaintiff's] newly-attached exhibits").

11        As Defendant has met its burden to show that any delay in disclosure was harmless, and

12    Plaintiff has not offered any arguments or evidence as to how she has been harmed by the allegedly

13    delayed disclosure, the undersigned will recommend that Plaintiff's Motion to Strike be denied.

14    *See Hupp v. San Diego Cnty.*, No. 12-CV-0492-GPC-RBB, 2014 WL 347602 (S.D. Cal. Jan. 30,

15    2014) (finding no prejudice to the plaintiff where the plaintiff failed to offer any argument or

16    evidence to rebut the defendant's showing of harmlessness regarding its failure to disclose).

17        **B.**     **Defendant's Motion to Strike**

18        Defendant moves to strike "new" evidence and arguments filed with Plaintiff's reply brief

19    in support of the Class Certification Motion. (Doc. 75.) Specifically, Defendant requests that the

20    Court: (1) strike a declaration from Plaintiff's counsel, James M. Treglio, and deposition testimony

21    from David Wood, Alma Rodriguez, Brooke Freedman, and Plaintiff; and (2) disregard Plaintiff's

22    arguments raised in the reply brief to the extent that they that rely on the "new" evidence. (*Id.* at

23    1.) Alternatively, Defendant requests that it be provided an opportunity to respond to Plaintiff's

24    new evidence and arguments. (*Id.*)

25        The undersigned will recommend that Defendant's Motion to Strike be denied as moot

26    because consideration of the "new" evidence and arguments in Plaintiff's reply brief in support of

27

28    [8] Defendant indicates that it produced video footage from the Visalia distribution center back in October 2020, when the parties engaged in a private mediation. (Doc. 77 at 3; Giamela Decl. at ¶ 5.)

the Class Certification Motion does not affect the undersigned's recommendation that the Class Certification Motion be denied. *See, e.g.*, *Sheakalee v. Fortis Benefits Ins. Co.*, No. 1:08-CV-00416 AWI-GSA, 2008 WL 4279383 (E.D. Cal. Sept. 16, 2008) (denying motion to strike portions of a declaration as moot where "consideration of the contested portions would not affect the conclusion"); *Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1088–89 (D. Or. 2012) ("[A]ny necessary rulings on Kaiser's evidentiary objections should be denied as moot, because the evidence moved against does not change the recommendation that Kaiser's motions . . . should be granted.").

### III.  MOTION FOR CLASS CERTIFICATION

#### A.  Legal Standard

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (citation omitted). The court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable [numerosity requirement]; (2) there are questions of law or fact common to the class [commonality requirement]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality requirement]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy requirement]." *See* Fed. R. Civ. P. 23(a). The purpose of these requirements is to "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and to "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

In addition to these four requirements, the court must find that at least one of the following three conditions is satisfied: "(1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of

11

other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Dukes*, 564 U.S. at 345 (quoting Fed. R. Civ. P. 23(b)).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Dukes*, 564 U.S. at 350; *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 ("the party seeking certification . . . bears the burden of showing she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Rule 23 further provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues," Fed. R. Civ. P. 23(c)(4), or the "class may be divided into subclasses that are each treated as a class under this rule," Fed. R. Civ. P. 23(c)(5).  "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

A trial court has broad discretion to grant or deny a motion for class certification.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).  The court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes*, 564 U.S. at 351).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466.

### B.     Discussion

Plaintiff moves to certify five classes: the Unpaid Time Class, Overtime Class, Meal Period Class, Rest Period Class, and Wage Statement Subclass.  (Doc. 65 at 1–2; Doc. 65-1 at 1–2.) Plaintiff seeks certification under Rule 23(b)(3) (*see* Doc. 65-1 at 8), which permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Defendant opposes class certification, contending that Plaintiff cannot satisfy any of the Rule 23 requirements with respect to the proposed classes.[9]  (Doc. 71.)  For the reasons explained below, the Court finds that Plaintiff has failed to demonstrate commonality and predominance as to any of the proposed classes.  Accordingly, the undersigned will recommend that the Class Certification Motion be denied.

Although commonality and predominance are distinct inquiries, they often involve overlapping considerations, and courts often address the two requirements together.[10]  *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (noting that "there is substantial overlap between" the tests for commonality and predominance); *Schmidtberger v. W. Ref. Retail, LLC*, No. 2:19-CV-04300-VAP-SKX, 2021 WL 5024714, at *11–*12 (C.D. Cal. Sept. 28, 2021) (discussing commonality and predominance together); *Christensen v. Carter's Retail, Inc.*, No. 8:20-CV-00776-JLS (KESx), 2021 WL 4932244, at *6 (C.D. Cal. Oct. 21, 2021) (same).

The requirement of commonality demands that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' "  *Dukes*, 564 U.S. at 349–50.  The plaintiff must demonstrate "that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.' "  *Jimenez v. Allstate Inc. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350).  "What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Dukes*, 564 U.S. at 350 (2011) (citation omitted).

---

[9] As an initial matter, Defendant contends that the Court should consider the Class Certification Motion as one for reconsideration because the Court has already denied class certification.  (Doc. 71 at 19.)  The Court declines to do so, as the instant motion is the first motion for class certification filed by Plaintiff, and Plaintiff seeks certification of classes narrower than those proposed in the complaint and considered by the Court in Defendant's motion to deny class certification.

[10] Indeed, in their respective briefing, the parties addressed the two requirements together.  (*See* Doc. 65-1 at 8–20; Doc. 71 at 22–24.)

1   Similarly, predominance requires "that questions of law or fact common to class members

2   predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The

3   predominance requirement, however, "is far more demanding" than the commonality requirement.

4   *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 981 (C.D. Cal. 2015) (quoting *Amchem Prods., Inc.*

5   *v. Windsor*, 521 U.S. 591, 623-24 (1997)).  The predominance inquiry "tests whether proposed

6   classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at

7   623.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of

8   common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

9   1227, 1234 (9th Cir. 1996).

10          1.      Unpaid Time Class

11   Under California law, "[e]very employer shall pay to each employee . . . not less than the

12   applicable minimum wage for all hours worked in the payroll period."  Cal. Code Regs. tit. 8, §

13   11070(4)(b) (Wage Order 7-2001).  The California Supreme Court has held that "hours worked"

14   include "time spent on the employer's premises waiting for, and undergoing, required exit searches

15   of packages, bags, or personal technology devices voluntarily brought to work purely for personal

16   convenience by employees[.]" *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1042 (2020).  Plaintiff's

17   Unpaid Time Class is defined as "all individuals who are or were employed by VF Outdoor, LLC,

18   or its predecessor or merged entities in California as hourly, non-exempt employees, who were

19   employed at one of VF Outdoor LLC's distribution centers in California, who did not sign an

20   arbitration agreement with VF Outdoor LLC, and who were required by VF Outdoor LLC to

21   undergo pre-shift and post-shift security checks between August 26, 2015 and the present date."

22   (Doc. 65 at 1; Doc. 65-1 at 1.)

23   Where plaintiff seeks class certification on the theory that the defendant employed a

24   uniform unlawful policy or practice—as is the case here—the Court must consider whether the

25   plaintiff provided substantial evidence "that the entire class was subject to the same allegedly

26   [unlawful] practice." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011); *Brown*

27   *v. Wal-Mart Stores, Inc.*, No. 5:09-CV-03339 EJD, 2012 WL 3672957, at *4 (N.D. Cal. Aug. 24,

28   2012), *aff'd*, 651 F. App'x 672 (9th Cir. 2016) ("Plaintiff needs to offer 'substantial evidence' of

the company-wide policy or practice that violated [labor] regulations.").  "[W]here no substantial evidence points to a uniform, companywide policy, and proof of off-the-clock liability would have . . . to continue in an employee-by-employee fashion, class certification is inappropriate."  *Howard v. CVS Caremark Corp.*, No. CV1304748SJOPJWX, 2014 WL 11497793, at *10 (C.D. Cal. Dec. 19, 2014), *aff'd*, 628 F. App'x 537 (9th Cir. 2016) (*quoting Brinker Rest. Grp. v. Super. Ct.*, 53 Cal. 4th 1004, 1051 (2012)) (internal quotation marks omitted).

Plaintiff contends that Defendant "maintains uniform policies that require its employees to undergo security checks before starting their shifts, . . . and before leaving at the end of their shifts" (Doc. 73 at 1), but "the question is not whether employees had to undergo a security check, as that is not the unlawful policy of which Plaintiff complains."  *Christensen*, 2021 WL 4932244, at *7. Rather, the relevant question is whether Defendant had a uniform policy across its California distribution centers of conducting pre- and post-shift security checks off the clock.  *See id.*

Here, the Court finds there is no substantial evidence to support that Defendant has a uniform policy of the off-the-clock security checks.  According to Mr. Wood, "[e]ach distribution center operates independently of one another, and each management team has broad discretion in operating the distribution center . . . . The managerial discretion extends to entry and exit procedures."  (Wood Decl. at ¶ 5.)  The evidence shows that the security check procedures varied amongst the four distribution centers and also changed throughout the proposed class period (i.e., August 26, 2015, to the present date).  From August 2015 to October 2020, although all security checks that did occur during this period were conducted off the clock, Visalia was the only one that required security checks upon entry and exit, whereas the three other facilities required security checks only upon exiting.  (*See* Wood Dep. 20:20–21:4, 24:1–11, 26:20–27:11; 28:18–30:7, 30:15–23; 34:3–13; Plaintiff Decl. at ¶ 3.)  Therefore, there was no uniform policy of pre-shift and post-shift security checks across Defendant's California distribution centers between August 2015 and October 2020.  *See Figueroa v. Delta Galil USA, Inc.*, No. 18-CV-07796-RS, 2021 WL 1232695, at *4–*5 (N.D. Cal. Mar. 30, 2021) (finding that proposed subclass of "[a]ll persons . . . required to go through security checks off-the-clock when entering or exiting" the defendant's facilities did not feature predominant questions even where the evidence made clear that the defendant

15

"maintained a cross-facility practice of mandatory bag inspections for employees exiting the premises," because there lacked substantial evidence of a uniform "entering-the-premises bag inspection process").

To the extent that Plaintiff contends that Defendant had a uniform policy of requiring security checks across all four California distribution centers based on "searche[s] to see if [employees] were wearing their badges" (Doc. 73 at 1), that contention is unsupported by the evidence before the Court. As Plaintiff herself testified, only employees with bags were required to undergo security checks. (Plaintiff Dep. at 56:16–18.) Although Plaintiff indicated she was required to show her badge upon entry at the Visalia facility, she also testified she did not have to stop for a check if the badge was visible on her person. (*Id.* at 56:19–57:3.) Video footage of the security check at Visalia shows that employees generally have their badges hanging either around their neck or clipped to their waistband, and employees without bags walk past the security desk without any interaction with the guards. (Wood Decl., Ex. C.) This is consistent with video footage of the security desk at Ontario and the testimony of Ms. Rodriguez, the manager of the human resources department at that facility, who testified that there is no security check coming into the building. (Rodriguez Dep. at 20:25–26:1.) She explained that, as employees walk into the facility and past the security desk, the guard looks to make sure employees have their badge to confirm that they are authorized to be in the building. (*Id.* at 20:15–21:1, 28:3–8.) Employees do not stop for a security check upon entering the facility. (*Id.* at 20:25–21:1, 21:12–21; Wood Decl., Ex. D.)

Furthermore, at some point in 2020, the distribution centers changed their respective policies: at Visalia, security checks upon entry now take place after employees clock in, and post-shift checks occur before employees clock out; at Santa Fe Springs and Corona, security checks upon exiting occur before employees clock out; and at Ontario, security checks have been eliminated entirely. (Plaintiff Dep. at 80:8–20; Plaintiff Decl. at ¶ 8; Wood Dep. at 22:22–23:1, 24:15–25, 28:14–17, 29:23–30:12, 33:3–25, 34:10–13, 52:16–21; 54:17–24, 96:7–13; Treglio Decl., Exs. I & J.) Therefore, it appears that after October 2020, all security checks occur on the clock, and the security check procedures across all four facilities are lawful. As such, any claims by putative class members that they had to undergo security checks off the clock after October 2020

cannot be attributed to any policy of Defendant's, and thus, in the absence of a uniform policy, there is no common proof of Defendant's liability to class members across the class period. *See Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2017 WL 2304754, at *12 (C.D. Cal. May 23, 2017) ("When an employer has a facially valid policy, there is a risk that substantial individualized inquiries will be necessary to determine liability. This is grounds for denial of certification.").

Based on the foregoing, the Court finds that substantial evidence does not support a "a uniform policy consistently applied throughout the class period." *In re Autozone, Inc. Wage and Hour Employment Practices Litig.*, 2016 WL 4208200, at *10 (N.D. Cal. Aug. 10, 2016) (internal quotation marks and citation omitted) (decertifying a class, stating, "It is doubtful that the Court would have certified the class in 2012 had it understood that [the defendant] did not have a single uniform policy in place throughout the class period."); *Miles v. Kirkland's Stores, Inc.*, No. 518CV01559JWHSHKX, 2022 WL 1843225, at *8 (C.D. Cal. Mar. 22, 2022) (denying certification of a proposed class of employees who worked for the defendant from "May 24, 2014, through final judgment" for lack of predominance in part because the allegedly unlawful police "ha[d] not existed since at least 2018"); *Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 127489, at *1 (N.D. Cal. Jan. 10, 2020) (decertifying a class where the available evidence showed that the defendant did not have a uniform policy or practice on whether exit inspections were to be performed on or off the clock and thus "the question of whether all class members were subject to off-the-clock exit inspections resulting in uncompensated time cannot be resolved in one stroke");

The cases involving security checks and granting class certification cited by Plaintiff (*see* Doc. 65-1 at 13–14) do not compel a contrary finding, as those cases contained substantial evidence of a company-wide, off-the-clock security check policy. *See, e.g., Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2018 WL 369032, at *7 (N.D. Cal. Jan. 10, 2018) (referencing a "written security inspection policy [that] plainly applies to all associates whenever the associate leave[s] the store for any reason" and testimony from corporate designee that managers lacked discretion to

vary from the policy) (internal quotation marks omitted)[11]; *Moore v. Ulta Salon, Cosms. & Fragrance, Inc.*, 311 F.R.D. 590, 599, 605 (C.D. Cal. 2015) (finding that the plaintiff "provided substantial evidence of the existence of a company-wide practice whereby employees are subject to inspections and not compensated properly for the time spent on those inspections," including a written exit inspection requirement, supporting declarations from six other employees, and "[a] 'Key Corporate Communication' from August 2019" going out to all stores regarding "punch out" procedures, which stated in part: "[a]fter everyone has punched out, proceed to the front door, complete Exit Inspections in an expeditious manner and leave for the night"); *Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-CV-00333-EJD, 2019 WL 7312623, *1–*2 (N.D. Cal. Dec. 30, 2019) (referencing a written corporate policy requiring all employees with bags to undergo security checks, testimony from six class members that H&M had a policy of requiring employees to be seen by a manager before leaving, and testimony from H&M's corporate designee on the security check policy that "checks occur after the employees are off the clock"); *Otsuka v. Polo Ralph Lauren Corp.*, No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) ("Polo *does not dispute* that it maintains a uniform policy requiring employees to submit to bag searches, or that it does not compensate employees for time spent waiting for these searches.") (emphasis added).

By contrast, Plaintiff has failed to provide substantial evidence indicating that Defendant had a common policy or practice requiring off-the-clock security checks.  Unlike some of the cases cited by Plaintiff, there is no evidence of a written company-wide policy from Defendant mandating that its California employees undergo security checks upon entering and/or leaving the distribution centers and setting forth how the security checks were to be conducted.  *Cf. Frlekin v. Apple Inc.*, 309 F.R.D. 518 (N.D. Cal. 2015) (noting that Apple had a written policy imposing mandatory searches of employees' bags whenever they left the store and published guidelines for the procedure for conducting searches pursuant to the policy, and that "[e]ach of Apple's 52 stores in California performed searches pursuant to the bag-search").

---

[11] As noted above, the class in this case was subsequently decertified when available evidence showed that "because the class members did not experience a uniform policy of off-the-clock exit inspections."  *Heredia*, 2020 WL 127489, at *4.

1    In sum, the Court finds that Plaintiff has failed to a uniform policy of the off-the-clock

2   security checks, as the evidence shows that the security check procedures varied among the

3   California distribution centers and also changed over the course of the class period.   Therefore,

4   Plaintiff has not established commonality and predominance, and the undersigned will recommend

5   that the motion to certify the Unpaid Time Class be denied.

6                                    2.    Overtime Class

7    The Class Certification Motion indicates at the outset that Plaintiff also seeks to certify an

8   Overtime Class based on the pre- and post-shift security checks.  (Doc. 65-1 at 1.)  However, the

9   Court observes that there is no discussion of how the requirements of commonality and

10   predominance are met for this proposed class.  (*See id.* at 8–20.)  In any event, as the Overtime

11   Class is predicated on an alleged uniform policy of off-the-clock pre- and post-shift security checks,

12   the Court finds that Plaintiff has failed to establish commonality and predominance for the same

13   reasons as for the Unpaid Time Class, discussed above.   Accordingly, the undersigned will

14   recommend that the motion to certify the Overtime Class be denied.

15                                    3.    Meal Period Class

16    In California, an employee who works more than five hours is entitled to an uninterrupted

17   30-minute meal period.  *See* Cal. Code Regs., tit. 8, § 11010(4); *id.*, § 11010(11); *Brinker*, 53 Cal.

18   4th at 1040 (holding that an employer "satisfies [its] obligation if it relieves its employees of all

19   duty, relinquishes control over their activities and permits them a reasonable opportunity to take an

20   uninterrupted 30-minute break, and does not impede or discourage them from doing so.").  Plaintiff

21   seeks to certify a Meal Period Class under the theory that Defendant did not "relinquish all control"

22   over employees' activities during the meal period because employees could not leave the facility

23   without passing through the mandatory security exit procedures.  (Doc. 65-1 at 15–17.)  Plaintiff

24   thus contends that "[w]hether Defendants violated their meal period obligations by failing to

25   relinquish all control over employees' activities during their meal periods is a common issue that

26   can be resolved on a classwide basis."  (*Id.* at 17.)

27    The Court finds that the Meal Period Class faces the same barriers to certification as the

28   Unpaid Time Class—namely the changes to security check procedures at the four distribution

centers during the class period such that there was no uniform policy or practice to deprive employees of an uninterrupted 30-minute meal period. In any event, even assuming that employees at all four distribution centers were required to undergo security checks upon exit and entering the facility on their meal periods, the overwhelming evidence supports that employees nonetheless received meal periods in accordance with California law.

In *Figueroa v. Delta Galil USA, Inc.*, No. 18-CV-07796-RS, 2021 WL 1232695 (N.D. Cal. Mar. 30, 2021), the district court rejected the plaintiff's contention that the defendant's "bag check practice regularly deprived workers of uninterrupted 30-minute meal breaks," finding that there was "scant footing in the evidentiary record" to support the claim. *Id.* at *5. Specifically, the district court noted that the evidence showed that, at all but one facility, workers were allotted a 45-minute lunch break over the proposed class period. *Id.* The court reasoned:

> Even supposing those breaks began with an uncompensated bag check, only one of [the plaintiff's] nine declarants estimated the average bag check wait time to be more than five minutes. As a matter of basic arithmetic, the bag check process therefore does not serve as common evidence of [the defendant's] uniform failure to provide workers with 30-minute lunch breaks. Likewise, and more to the point, the vast majority of [the plaintiff's] declarants testified that they did in fact enjoy daily lunch breaks of at least 30 minutes, if not more.

*Id.*

Here, as in *Figueroa*, it is undisputed that Defendant has a policy of providing a 45-minute meal period to its employees (Plaintiff Dep. at 43:17–44:4; Rodriguez Dep. at 25:10–14), which, facially, is compliant with California law. "As a result, unless Plaintiff can provide substantial evidence that the policy was consistently applied to deprive employees of [meal] breaks free of employer control, individual, rather than common, questions will predominate." *Christensen*, 2021 WL 4932244, at *11 (citing *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 789 F. App'x 9, 11 (9th Cir. 2019)). Plaintiff has failed to meet this burden.

As an initial matter, the evidence regarding the length of security checks at Visalia is not entirely consistent. Plaintiff's declaration indicates that when she would leave Visalia for a meal period, the process of clocking out, walking to the front of the building, and undergoing a security check would take approximately 20 minutes. (Plaintiff's Decl. at ¶ 4.) At her deposition, Plaintiff clarified that the 20 minutes accounted for both the exit and entry checks, as walking from the time

clocks at the back of the facility to the front door took about five to ten minutes.  (Plaintiff's Dep. at 69:2–14.)  Plaintiff also acknowledged that, at some point after she filed her lawsuit, there was a policy change at Visalia, such that she could use the time clocks closer to the entrance of the facility (Plaintiff Decl. at ¶ 8; Plaintiff Dep. at 76: 17–23, 77:20–78:8, 80:2–20), thus reducing the security check time, if not eliminating it entirely when the procedure was changed so that all checks happened on the clock.  But most notably, Plaintiff testified that in her experience, whenever she left for her meal period, she always had 30 minutes away from the facility, either driving to a restaurant, eating, or driving back.  (Plaintiff Dep. at 60:14–25, 67:1–7.)  Defendant's video footage of the security check at Visalia shows that the bag inspection upon entry took no more than 30 seconds.  (Wood Decl., Ex. C.)  Based on this evidence, it does not appear that Plaintiff was ever deprived of an uninterrupted 30-minute meal period as a result of the security check procedures at Visalia.

Moreover, Plaintiff did not provide any evidence with regard to the length of security checks at the distribution centers other than Visalia.  She offered no declarations from employees at the Corona, Ontario, and Santa Fe Springs facilities regarding their security check experiences.  As discussed above, Plaintiff indicated that the longest time it took to complete a security check at Visalia was five to ten minutes, given the distance she had to walk to a time clock (before they were moved closer to the entry); as the Visalia distribution center is the largest of the four, security checks at the other facilities presumably took less than five to ten minutes.  Also, security checks at the facilities other than Visalia were required only upon exiting (before the changes in October 2020), so even assuming that the security checks took ten minutes, employees at those other facilities would still be left with a 35-minute meal period.  With this limited evidence, it is difficult for the Court to conclude that the security check procedures across all four California distribution centers resulted in a uniform denial of uninterrupted 30-minute meal periods.

As there is no substantial evidence that Defendant had a security check policy that uniformly deprived employees across all of its California facilities of a lawful meal period, the Court would

1  have to conduct individualized inquiries into determine Defendant's liability.[12]  Accordingly, the

2  Court will recommend that the motion to certify the Meal Period Class be denied.

3              4.    Rest Period Class

4         The Industrial Welfare Commission ("IWC") Wage Order No. 1 provides that "[e]very

5  employer shall authorize and permit all employees to take rest periods, which insofar as practicable

6  shall be in the middle of each work period" and must amount to "ten . . . minutes net rest time per

7  four . . . hours worked or major fraction thereof."  *See* Cal. Code Regs., tit. 8, § 11010(4); *id.* at §

8  11010(12).  Plaintiff seeks to certify a Rest Period Class under a similar theory as the Meal Period

9  Class.  (Doc. 65-1 at 17–18.)  Citing to the California Supreme Court's decision in *Augustus v.*

10  *ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016), *as modified on denial of reh'g* (Mar. 15, 2017),

11  Plaintiff contends that employers do not relinquish all control of employees' activities during their

12  rest periods if the employers "prevent[] employees from taking their rest periods 'off premises'

13  without going through the mandatory security exit procedures[.]"  (Doc. 65-1 at 17–18.)

14         The Court finds that the Rest Period Class lacks commonality and predominance for all the

15  same reasons that the Meal Period Class do.  In particular, the evidence here supports that

16  employees received an uninterrupted 10-minute meal period as required by California law, even

17  accounting for security bag checks.  Defendant has a policy of providing 15-minute rest periods.

18  (Plaintiff Dep. at 45:13–19, 52:4.)  As discussed above, video evidence of the security checks show

19  that the security checks take approximately 30 seconds.  (Wood Decl., Exs. C, D, E, F.)  As with

20  meal periods, Plaintiff also testified that she has been able to consistently take her two 15-minute

21  rest periods throughout the course of her employment with Defendant.  (Plaintiff's Dep. at 68:10–

22  14.)  Again, changes to the security check procedures preclude a finding of a uniform denial of

23  mandated rest periods as a result of the bag checks.

24         More fundamentally, Plaintiff misunderstands *Augustus* in asserting that Defendant fails to

25  relinquish all control of its employees during meal breaks by requiring them to undergo security

26  checks if they wish to leave the facility.  Again, *Figueroa* is instructive.  There, the plaintiff

27  _____

[12] To the extent Plaintiff is asserting that the mere requirement of a security check upon exit and re-entry automatically renders the meal period "not free from employer control" and thus non-compliant with California law (*see* Doc. 65-1

28  at 15–17), the Court rejects that claim.  Plaintiff provides no authority for such a broad contention.

1    "focuse[d] his Rest Break Subclass predominance showing on 'the issue of whether the security

2    check policy leads to non-compliant rest breaks[,]'" citing *Augustus*, which the district court found

3    to be "misguided." *Figueroa*, 2021 WL 1232695, at *6.  The court explained:

> [The plaintiff's] argument embeds the notion that California workers are entitled to
> 10-minute rest breaks *outside* the workplace.  This is not the law.  In *Augustus* . . . ,
> the California Supreme Court explained that "[b]ecause rest periods are 10 minutes
> in length . . . one would expect employees will ordinarily have to remain on site or
> nearby."  "This constraint," the *Augustus* court observed, "which is common to all
> rest periods, is not sufficient to establish employer control."

8    *Id.* (citations omitted).   The court then observed that, "[i]mplementing this straightforward

9    interpretation of California law, multiple federal courts have dismissed arguments predicating

10   liability on an employer's policy of prohibiting off-premises rest breaks." *Id.* (citing *Le v. Walgreen

11   Co.*, No. CV 18-1548-DOC (ADS), 2020 WL 3213684, at *7 (C.D. Cal. Apr. 27, 2020)

12   ("[P]laintiffs' argument that a policy requiring an employee to remain on-premises [during rest

13   breaks]    violates    California    law    is    incorrect.");    *Bowen    v.    Target    Corp.*,    No.

14   EDCV162587JGBMRWX, 2020 WL 1931278, at *7 (C.D. Cal. Jan. 24, 2020) (quoting *Augustus*,

15   2 Cal.5th at 270) ("*Augustus* is explicit that a policy that prohibits employees from leaving the

16   properties during rest periods—without more—'is not sufficient to establish employer control.' ")).

17   Ultimately, the court declined to adopt the plaintiff's understanding of *Augustus*— that "it is wrong

18   to interpret . . . *Augustus* as allowing an employer to require that employees remain on premises

19   during a . . .  rest break"—and concluded that the plaintiff could not rely on bag inspections as a

20   source of common questions could be resolved for all members of the Rest Break Subclass.  *Id.*

21        Here, Plaintiff asserts that Defendant has a "policy and practice of limiting where an

22   employee can take a rest break and requiring employees to remain on premises during rest periods,"

23   and thus, "whether Defendant[] relinquished all control over employees during their rest periods is

24   a common issue that can be resolved on a class-wide basis."  (Doc. 65-1 at 18.)  But as *Figueroa*

25   observes, there is nothing facially unlawful about a policy of requiring employees to stay on the

26   premises during a rest break, much less permitting employees to exit the premises, albeit with a

27   security check.  Therefore, the Court finds that Plaintiff's asserted common question " 'does

28   nothing to facilitate common proof' " of whether Defendant's rest break policy "in fact deprived

each of [Defendant's] employees of rest periods" free of employer control." *Williams v. Veolia Transp. Servs., Inc.*, 379 F. App'x 548, 549 (9th Cir. 2010) (quoting *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009)). Defendant's liability as to each member of the Rest Period Class would thus require individualized inquiries into each member's rest period experiences, and as such common questions do not predominate.

Accordingly, the undersigned will recommend that the Meal Period Class be denied.

5.    Wage Statement Subclass

California Labor Code Section 226(a) ("Section 226(a)") requires every employer to furnish each of its employees an accurate itemized statement that shows, among other things, "gross wages earned," "net wages earned," and "the name and address of the legal entity that is the employer." Cal. Lab. Code § 226(a). "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [Section 226(a)] is entitled to recover . . . damages." *Id.* at § 226(e)(1). An employee suffers injury for purposes of § 226(e) if (1) "the employer fails to provide accurate and complete information as required [under § 226(a)]," and (2) the employee cannot reasonably ascertain, among other things, "the name and address of the employer" "without reference to other documents or information." *Id.* § 226 (e)(2)(B)(iii), (C).

Plaintiff seeks to certify a Wage Statement Subclass, contending that the wage statements issued by Defendant were deficient in two ways: (1) the statements contained inaccurate information (e.g., wages earned and time worked) due to the failure to properly account for time spent undergoing security checks off the clock; and (2) the statements did not correctly identify Defendant's address. (Doc. 65-1 at 18–20.)

As discussed above, the Court finds that Plaintiff failed to provide substantial evidence that employees were subject to a uniform unlawful policy or practice with regard to Defendant's security checks, and as such commonality and predominance are not satisfied as to the Unpaid Time Class, Overtime Time Class, Meal Period Class, and Rest Period Class. To the extent that the Wage Statement Subclass rests on the allegedly unlawful security check practice and is derivative of the claims raised by the other proposed classes, this subclass also does not meet the commonality and predominance requirements. *See, e.g.*, *Collins v. ITT Educ. Servs., Inc.*, No. 12-cv-1395, 2013 WL

1  6925827, at *10 (S.D. Cal. July 30, 2013) (denying certification of wage statement class because it

2  was "derivative" of the other claims); *Gonzalez v. Officemax N. Am.*, Nos. 07-cv-00452, 07-cv-

3  04839, 2012 WL 5473764, at *6 n.13 (same); *Miles*, 2022 WL 1843225, at *7 (same).

4          As for whether the wage statements accurately stated Defendant's address, Plaintiff asserts

5  that Defendant continued to state its address as 2701 Harbor Parkway, Alameda, California 94502

6  (the "Alameda Address"), on wage statements even after Defendant closed its office at that address

7  in December 2019.  (Doc. 65-1 at 5.)  To support her contention that Defendant regularly issued

8  inaccurate wage statements, Plaintiff provided her own wage statements dating from May 2017 to

9  May 2019 and a single statement from May 2020, all of which include the Alameda Address.

10 (Docs. 65-14, 65-15.)  Plaintiff also requests the Court take judicial notice of three of Defendant's

11 Statements of Information filed with the California Secretary of State, with one filed on December

12 10, 2019, that identifies Defendant's principal address as 8505 East Orchard Road, Greenwood

13 Village, Colorado 80111.[13]

14         As Plaintiff acknowledges, Defendant's business address did not change until December

15 2019, so her wage statements from May 2017 to May 2019 are all accurate with regard to

16 Defendant's address.  Accordingly, those wage statements do not support that Defendant has a

17 practice of issuing inaccurate wage statements.  Plaintiff did not provide wage statements from any

18 other putative subclass members—which leaves Plaintiff's wage statement from May 2020 as the

19 only evidence that Defendant issued inaccurate wage statements.  Based on this scant evidence, the

20 Court cannot conclude that Defendant issued uniform wage statements to all of its employees, much

21 less that it had a common practice of issuing inaccurate ones.  *See Moore v. Coty Inc*, No.

22 EDCV142427VAPDTBX, 2016 WL 6023820, at *9 (C.D. Cal. Mar. 3, 2016) ("The Court . . .

23 refuses to find Coty employed an unlawful policy based on the single remaining wage statement

24 from 2011.").  Therefore, the Court finds that Plaintiff has failed to demonstrate commonality.

25

26 [13] The Court grants Plaintiff's request for judicial notice.  *See One Hour Air Conditioning Franchising SPE LLC v. Bigham Servs., Inc.*, No. 21-CV-07891-VC, 2022 WL 3132424, at *1 (N.D. Cal. Aug. 5, 2022) ("The request for
27 judicial notice is granted.  The statement of information is a fact not subject to reasonable dispute because it can be accurately and readily determined from the California Secretary of State's website.") (citing. Fed. Fed. R. Evid.
28 201(b)(2)).

1    The cases cited by Plaintiff in support of finding commonality are distinguishable, as the

2    plaintiffs in those cases provided substantial evidence that the defendants issued uniform wage

3    statements.  (*See* Doc. 65-1 at 19–20.)  For example, in *Ward v. United Airlines*, Inc., No. C 15-

4    02309 WHA, 2016 WL 1161504 (N.D. Cal. Mar. 23, 2016), the district court observed that the

5    plaintiff "submitted numerous wage statements issued to several different members of the putative

6    class throughout the class period [citations].  The wage statements followed a uniform format, and

7    they can plainly serve as a common form of proof of the presence or absence of [the defendant's]

8    full legal name and address and any applicable hourly rates and hours worked on a class-wide

9    basis."  *Id.* at *2.  Similarly, in *McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290 (C.D. Cal. 2011), the

10   district court found that the defendant provided its hourly employees with identical wage

11   statements, citing deposition testimony and wage statements.  *Id.* at 296.  The court found that

12   commonality was satisfied as the defendant's "potential Labor Code liability in this case derives

13   from the flaws in its wage statement form which is used to pay all 10,000 members of the class."

14   *Id.* at 296–97.  By contrast, here,  Plaintiff did not provide wage statements from employees from

15   distribution centers other than Visalia.  There is no testimony or any other evidence showing that

16   Defendant uses a standard wage statement form to pay all of its employees.  The Court thus lacks

17   any basis to conclude that Defendant issued uniform wage statements across all four California

18   distribution centers.

19   Accordingly, the undersigned will recommend that the motion to certify the Wage

20   Statement Subclass be denied.

21   **IV.        CONCLUSION AND RECOMMENDATIONS**

22   Based on the foregoing, the undersigned concludes that Plaintiff lacks commonality and

23   adequacy pursuant to Fed. R. Civ. P. 23 with respect to the putative class members who signed the

24   Arbitration Agreement.[14]  Accordingly, the undersigned RECOMMENDS that:

25

---

26   [14] Having found that Plaintiff  failed to demonstrate commonality and predominance, the undersigned need not address
     Defendant's arguments that Plaintiff also cannot satisfy numerosity, typicality, adequacy, or superiority under Rule

27   23.  *See Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949, 963 (N.D. Cal. 2017).  *See also Farr v. Acima
     Credit LLC*, No. 20-CV-8619-YGR, 2021 WL 2826709, at *7 n.6 (N.D. Cal. July 7, 2021); *Macedonia Distrib., Inc.*

28   *v. S-L Distribution Co., LLC*, No. SACV171692JVSKESX, 2020 WL 610702, at *6 n.1 (C.D. Cal. Feb. 7, 2020).

1.      Plaintiff's Motion to Strike (Doc. 74) be DENIED;

2.      Defendant's Motion to Strike be DENIED (Doc. 75) as MOOT; and

3.      Plaintiff's Motion for Class Certification (Doc. 65) be DENIED.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.   E.D. Cal. Local Rule 304(b).   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 22, 2022**                  /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE

27