1  **POTTER HANDY, LLP**
   JAMES M. TREGLIO, SBN 228077
2  JimT@potterhandy.com
   100 Pine St., Ste 1250
3  San Francisco, CA 94111
4  Telephone: (858) 375.7385
   Facsimile: (888) 422-5191
5
6  *Attorney for Plaintiff Briana Valencia*

7                  **UNITED STATES DISTRICT COURT**

8                  **EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9  BRIANA VALENCIA, an individual, on behalf of all persons similarly situated on behalf of the State of California, as a private attorney general, and on behalf of all aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>VF OUTDOOR, LLC, a California limited liability company, and DOES 1 to 50, inclusive,<br><br>Defendants. | **CASE NO: 1:20-CV-01795-DAD-SKO**<br><br>Hon. Sheila K. Oberto/ Dept. 7<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AND ENTRY OF JUDGMENT; DECLARATION OF JAMES M. TREGLIO; [PROPOSED] JUDGMENT**<br><br><u>Hearing</u>:<br><br>Date: January 21, 2025<br>Time: 1:30 p.m.<br>Dept.: 7 |

19    TO THE COURT, THE PARTIES, AND THEIR ATTORNIES OF RECORD

20    Please take notice that on January 21, 2025 at 1:30 p.m. or as soon thereafter as counsel may be heard in Department 7 of the above-entitled Court, Plaintiff Briana Valencia ("Plaintiff") will move for an Order granting final approval of settlement.

      This Application is made on the grounds set forth in the accompanying materials. This Application will be based upon this notice, the points and authorities set forth below, the attached declaration, and the complete files and records in this action. A proposed judgment is lodged concurrently herewith.

Dated: December 12, 2024              POTTER HANDY, LLP

                                      /s/ James M. Treglio

                                      By:_____
                                          James M. Treglio

                                      *Attorney for Plaintiff Briana Valencia, in her capacity as Private Attorney General Representative*

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................... II

I.     INTRODUCTION ....................................................................................................... 1

II.    THE GOALS OF PAGA AND ITS REQUIREMENTS ............................................. 2

III.   BECAUSE THE ALLEGEDLY AGGRIEVED EMPLOYEES HAVE NO
       SUBSTANTIVE CLAIMS, TRADITIONAL NOTICE IS NOT REQUIRED ........... 5

IV.    RELEVANT ISSUES IN THE CURRENT LITIGATION AND INVESTIGATION
       AND DISCOVERY REGARDING DEFENDANT'S LABOR PRACTICES, AND
       RISKS ASSOCIATED WITH LITIGATION ............................................................. 5

V.     THE SETTLEMENT AND DISTRIBUTION OF PAGA PENALTIES ..................... 6

       A.     Summary of Settlement Terms .......................................................................... 7

       B.     Payment and the Notice .................................................................................... 7

       C.     Settlement Allocation to the Allegedly Aggrieved Employees ........................ 8

       D.     The Release ...................................................................................................... 8

VI.    THE SETTLEMENT IS FAIR AND REASONABLE AND WARRANTS COURT
       APPROVAL .................................................................................................................. 8

       A.     Evaluation of the PAGA Settlement ................................................................. 9

       B.     Discounting Penalties for Purposes of Settlement .......................................... 11

VII.   THE ATTORNEY'S FEES AND COSTS SHOULD BE AWARDED ..................... 12

VIII.  SUBMISSION TO THE LWDA ................................................................................ 12

IX.    THE SETTLEMENT ADMINISTRATOR ................................................................ 12

X.     CONCLUSION ........................................................................................................... 12

# Table of Authorities

**Cases**

*Amalgamated Transit Union, Local 1756 v. Superior Court* (2009) 46 Cal.4th 993, 1003 .................. 2, 3

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-17 (1997) ............................................................. 3

*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 ....................................................................... passim

*Baumann v. Chase Investment Services Corp.*, 747 F.3d 1117, 1123-24 (9th Cir. 2014) ................... 3, 5

*Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal.App.4th 365 (2005) ......................................................... 3

*Casida v. Sears Holding Corp*, 2012 WL 253217, at*3 (E.D.Cal. Jan. 26, 2012) .................................. 4

*Concepcion*, 131 S.Ct. at 1751-52 ............................................................................................................ 5

*Dunk v. Ford Motor Company* (1996) 48 Cal.App. 4th 1794, 1802 ......................................................... 9

*Franco v. Athens Disposal Co.*, 171 Cal.App.4th 1277 (2009) ................................................................. 3

*In re Marriage of Biddle* (1997) 52 Cal.App.4th 396, 399 ....................................................................... 4

*Iskanian v. CLS Transportation*, 59 Cal.4th 348 (2014) ................................................................. 2, 3, 4

*Mallick v. Superior Court* (1979) 89 Cal.App. 3d. 434 ............................................................................. 9

*Officers of Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1995) 688 F.2d. 615, 624 ......................................................................................................................................... 9

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832- 33 (1999) ........................................................................ 3

*Pedroza v. Petsmart, Inc.*, at*15 (C.D. Cal. Jan. 28, 2013) ..................................................................... 4

*Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 435-436 (9th Cir. 2015) ................ 2, 3, 5

*Sample v. Big Lots Stores, Inc.*, No. C 10-03276 SBA, 2010 WL 4939992 at *3 (N.D. Cal. Nov. 30, 2010) ................................................................................................................................................ 3

*Sanders v. Pacific Gas & Elec. CO.* (1975) 53 Cal.App.3d 661, 671 ....................................................... 4

*Thomas v. Aetna Health of Cal. Inc.*, 2011 WL 2173715, at *11 (E.D. Cal. June 2, 2011) ................... 4

**Statutes**

Cal. Lab.Code § 2699(g)(l) ........................................................................................................................ 3

Cal. Labor Code Section 2698 et seq. ....................................................................................................... 1

California Lab. Code §2698(l) ............................................................................................................... 1, 5

Fed.R.Civ.P. 23 ......................................................................................................................................... 3

Labor Code §2699(1)(2) ................................................................................................... 4, 9, 12

Labor Code §2699(f)(2) ............................................................................................................ 4

Labor Code §2699(i) ................................................................................................................. 4

Rule 23 ....................................................................................................................................... 3

Rule 23(a) .................................................................................................................................. 5

Rule 23(c)(2) .............................................................................................................................. 5

Rules 23(a)(4) and (g) ................................................................................................................ 5

**I.     Introduction**

This is a PAGA action involving wage and hour claims on behalf of aggrieved employees, Plaintiff Braina Valencia ("Plaintiff"), individually and serving as the representative for the State of California, and her counsel sought civil penalties against Defendant.

This motion seeks approval of non-reversionary settlement for $175,000 in an action alleging certain Labor Code violations, which Plaintiff brought pursuant to the Private Attorneys General Act of 2004 ("PAGA") on behalf of all current and former employees in the State of California at any time from June 20, 2018 up to and including the date the Court approves the Settlement between Plaintiff and Defendants ("Allegedly Aggrieved Employees"). Based on the latest information provided by Defendants, the number of employees (Allegedly Aggrieved Employees) for mediation purposes was estimated at approximately 2,213. PAGA is codified at Cal. Labor Code Section 2698 et seq. and provides:

> The superior court shall review and approve any settlement of any civil action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court.
>
> (3) A copy of the superior court's judgment in any civil action filed pursuant to this part and any other order in that action that either provides for or denies an award of civil penalties under this code shall be submitted to the agency within 10 days after entry of the judgment or order.

California Lab. Code §2698(l).

On or about June 20, 2019, Plaintiff sent notice to the LWDA, exhausting administrative remedies under the PAGA for failure to pay all wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failure to pay all overtime wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failure to provide meal periods and pay meal period premiums; failure to provide paid rest periods and pay missed rest period premiums; failure to pay all wages owed in a timely manner; failure to pay all wages owed upon termination; failure to provide complete/accurate wage statements; derivative UCL violations; and PAGA and other penalties.  The LWDA did not respond to the notice within the statutorily required time frame and, as such, Plaintiff became

authorized to act as Private Attorneys General on all alleged PAGA claims.

After exhausting administrative remedies, Plaintiff filed a Complaint on August 27, 2019, in Alameda County Superior Court on behalf of herself and the Allegedly Aggrieved Employees for claims alleged in the June 20, 2019 notice to the LWDA. In his Complaint, Plaintiff contends that Defendants violated California law for Plaintiff and the Allegedly Aggrieved Employees by failing to pay all wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failing to pay all overtime wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failing to provide meal periods and pay meal period premiums; failing to provide paid rest periods and pay missed rest period premiums; failing to pay all wages owed in a timely manner; failing to pay all wages owed upon termination and failing to provide complete/accurate wage statements.

The settlement reached by the parties is intended to resolve the entirety of this matter on behalf of Plaintiff and all current and former employees in the State of California from June 20, 2018 up to and including the date the Court approves the Settlement between Plaintiff and Defendant.

## II. The Goals of PAGA and Its Requirements

In 2003, the Legislature passed the PAGA, recognizing the historic underfunding of the LWDA and its Division of Labor Standards & Enforcement ("DLSE").

The goals of PAGA as set forth in decisions of California courts and the Ninth Circuit are met in this Settlement Agreement. PAGA was enacted to obtain broader compliance with the State's labor laws. While procedurally a PAGA claim may be filed as a class action, a PAGA claim is really an enforcement action pursued on behalf of the California Labor and Workforce Development Agency which is the real party in interest. *Arias v. Superior Court* (2009) 46 Cal.4th 969, 986. The aggrieved employees have no substantive claims that may be asserted under PAGA. *Amalgamated Transit Union, Local 1756 v. Superior Court* (2009) 46 Cal.4th 993, 1003.

The differences between a traditional class action and a PAGA suit are well summarized in *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 435-436 (9th Cir. 2015) en banc review denied (2016). Following the California Supreme Court's decision in *Iskanian v. CLS Transportation*, 59 Cal.4th 348 (2014), the Ninth Circuit explained:

> The class action is a procedural device for resolving the claims of absent parties

> on a representative basis. See Fed.R.Civ.P. 23; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832- 33 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-17 (1997). By contrast, a PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer. An employee bringing a PAGA action does so "as the proxy or agent of the state's labor law enforcement agencies," *Iskanian*, 59 Cal.4th at 380 (quoting *Arias v. Superior Court*, 46 Cal.4th 969, 986 (2009)), who are the real parties in interest, see id. at 382. As the state's proxy, an employee-plaintiff may obtain civil penalties for violations committed against absent employees, Cal. Lab.Code § 2699(g)(l), just as the state could if it brought an enforcement action directly. However, by obtaining such penalties, the employee-plaintiff does not vindicate absent employees' claims, for the PAGA does not give absent employees any substantive right to bring their "own" PAGA claims. See *Amalgamated Transit Union. Local 1756, AFL-CIO v. Superior Court*, 46 Cal .4th 993. 1003 (2009); see also *Iskanian*, 59 Cal.4th at 381 (explaining that "[t]he civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities").

*Sakkab*, supra at 435-436.

The approval process is different in a PAGA case as compared to a traditional class action. While the aggrieved employees are to receive 25% of the penalties collected by the State, this is not a substantive right they hold. Rather it is merely a sum to incentivize the bringing of a suit on behalf of the State:

> The nature of PAGA penalties is also markedly different than damages sought in Rule 23 class actions. In class actions, damages are typically restitution for wrongs done to class members. But PAGA actions instead primarily seek to vindicate the public interest in enforcement of California's labor law. See *Sample v. Big Lots Stores, Inc.*, No. C 10-03276 SBA, 2010 WL 4939992 at *3 (N.D. Cal. Nov. 30, 2010): *Franco v. Athens Disposal Co.*, 171 Cal.App.4th 1277 (2009). The bulk of any recovery goes to the LWDA, not to aggrieved employees. And, the twenty-five percent portion of the penalty awarded to the aggrieved employee does not reduce any other claim that the employee may have against the employer – in this case, for example, for withheld overtime pay. See *Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal.App.4th 365 (2005). The employee's recovery is thus an incentive to perform a service to the state, not restitution for wrongs done to members of the class.
>
> In the end, Rule 23 and PAGA are more dissimilar than alike. A PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief.

*Baumann v. Chase Investment Services Corp.*, 747 F.3d 1117, 1123-24 (9th Cir. 2014). That the 25

percent does not make the employees real parties in interest is clear from *Iskanian*:

> A PAGA representative action is therefore a type of qui tam action. "Traditionally, the requirements for enforcement by a citizen in a qui tam action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty." (*Sanders v. Pacific Gas & Elec. CO.* (1975) 53 Cal.App.3d 661, 671 (Sanders). The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation. The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit. (See *In re Marriage of Biddle* (1997) 52 Cal.App.4th 396, 399.)

*Iskanian*, supra at 382.

The settlement of a PAGA claim requires court approval pursuant to Labor Code §2699(1)(2) ("the superior court shall review and approve any settlement of any civil action pursuant to this part"). However, "[a] PAGA claim asserted on a non-class representative basis…is not considered a class action but a law enforcement action." One does not have to meet the requirements of a class action. *Casida v. Sears Holding Corp*, 2012 WL 253217, at*3 (E.D.Cal. Jan. 26, 2012); *Thomas v. Aetna Health of Cal. Inc.*, 2011 WL 2173715, at *11 (E.D. Cal. June 2, 2011); *Arias v. Superior Court.* 46 Cal.4th 969. 980-88 (affirming the lower court's holding that "plaintiff need not satisfy class action requirements" to assert a PAGA claim). *Pedroza v. Petsmart, Inc.*, at*15 (C.D. Cal. Jan. 28, 2013)

PAGA provides that aggrieved employees may bring actions to recover civil penalties. Those civil penalties are generally $100 per employee per pay period for an initial violation and $200 per employee per pay period for subsequent violations. Labor Code §2699(f)(2). Of any civil penalties collected, 75 percent belongs to the LWDA and 25 percent belongs to the aggrieved employees. Labor Code §2699(i).

The appropriate focus of the Court's review in the case at bar should be on whether the settlement enhances the State's enforcement of its wage orders and whether it does so by a meaningful civil penalty paid to the LWDA. It is submitted that the monetary aspect of this settlement clearly meets this standard. The total settlement of $175,000.00 for approximately 2,213 Aggrieved employees equates to an approximate $9.57 per Allegedly Aggrieved Employee. After

payment of administration costs and requested attorneys' fees and costs, the proposed settlement will provide approximately $84,750, from which 75% ($63,562.50) will be paid to the LWDA and 25% ($21,187.50) will be distributed among the Allegedly Aggrieved Employees. (Declaration of James M. Treglio ("Treglio Decl.") ¶9).

### III. Because the Allegedly Aggrieved Employees have no Substantive Claims, Traditional Notice is not Required

This is not the case in a PAGA action where the real party in interest is the LWDA and the employees are nominal parties. See *Urbino v. Orkin Services of California*, 726 F.3d 1118, 1122-23 (9th Cir. 2013). The LWDA, as the real party in interest has, of course, received formal notice of the terms of the settlement as required by Labor Code §2698(l). But the Allegedly Aggrieved Employees do not receive the traditional class notice:

> Because a PAGA action is a statutory action for penalties brought as a proxy for the state, rather than a procedure for resolving the claims of other employees, there is no need to protect absent employees' due process rights in PAGA arbitrations. Compare *Concepcion*, 131 S.Ct. at 1751-52 (observing "it is…odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied"), with *Arias*, 46 Cal.4th at 984-87, 95 Cal.Rptr.3d 588, 209 P.3d 023. PAGA arbitrations therefore do not require the formal procedures of class arbitrations. See *Baumann*, 747 F.3d at 1123.
>
> Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action. In a PAGA action, the court does not inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees – critical requirements in federal class actions under Rules 23(a)(4) and (g)…Moreover, unlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality *Id*. at 1122-23 (citations omitted).

*Sakkab* (supra at 436).

### IV. Relevant Issues in the Current Litigation and Investigation and Discovery Regarding Defendant's Labor Practices, and Risks Associated with Litigation

A PAGA Notice was filed by Plaintiff against Defendant for Defendant's alleged violation of the California Private Attorney Generals Act of 2004, Labor Code §2698, et seq. The LWDA did not notify Plaintiff that it intended to further investigate or pursue these allegations within sixty-five (65) days of the postmark date of the PAGA letter.

1    Plaintiff filed a Complaint on August 27, 2019, in Alameda County Superior Court on
2 behalf of himself and the Allegedly Aggrieved Employees for claims alleged in the June 20, 2019
3 notice to the LWDA. In his Complaint, Plaintiff contends that Defendant violated California law
4 by failing to pay all wages owed for time spent in bag checks, and traveling from the front door of
5 each warehouse to the workstation; failing to pay all overtime wages owed for time spent in bag
6 checks, and traveling from the front door of each warehouse to the workstation; failing to provide
7 meal periods and pay meal period premiums; failing to provide paid rest periods and pay missed
8 rest period premiums; failing to pay all wages owed in a timely manner; failing to pay all wages
9 owed upon termination and failing to provide complete/accurate wage statements.

10   As the Court will recall, the matter was originally filed as a class action, leading to
11 Plaintiff's Motion for Class Certification. In that Motion (ECF 65), Plaintiff provided information
12 which indicated that the practices Plaintiff alleged violated California law ended shortly after the
13 PAGA notification was filed. (ECF No. 65-4, ¶8).

14   Defendant at all times disputed and denied, and continues to dispute and deny, that it was
15 ever liable to Plaintiff, or any other person, for any of the claims asserted in the Complaint,
16 including the claims for penalties under PAGA. Defendant has also argued that the Court would
17 rule PAGA claims in this matter would be unmanageable, which, given the Court's ruling on
18 Plaintiff's Motion for Class Certification (ECF 91), seems more likely than not. And indeed, the
19 intervening case of *Huerta v. CSI Electrical Contractors* (2024) 15 Cal.5th 908, seems to
20 strengthen the defenses proffered by Defendant. (Decl. Treglio at ¶¶20-22).

21   Defendant has provided information that there were approximately 2,213 aggrieved
22 employees during the PAGA Period. (Decl. Treglio at ¶13). Further, and as described in detail in
23 the Declaration of James M. Treglio, during the initial mediation Defendant disclosed that during
24 the PAGA period – the period where the practices at issue were in use – there were 72,088 pay
25 periods. After several months of further negotiations, the parties reached an agreement in principle
26 and fully executed a settlement agreement on September 12, 2024. ( Treglio Decl. ¶12)

27        **V.**     **The Settlement and Distribution of PAGA Penalties**

### A. Summary of Settlement Terms

The proposed Settlement Agreement (Treglio Decl., Exhibit 1) involves the formation of a non-reversionary fund totaling $175,000.00 ("Gross Settlement Fund"). The $175,000.00 fund that is created will be used to pay attorney fees and litigation costs (not to exceed $57,750.00 in fees plus $7,500 in costs) and settlement administration costs subject to Court approval) to Simpluris, Inc. The Settlement Fund is thus $84,750.00. Seventy-five percent (75%) of the remaining Settlement Fund (i.e. ($63,562.50.00) will be distributed to the California Labor & Workforce Development Agency ("LWDA") as required by the PAGA and the remaining twenty-five percent (25%) (i.e. approx. $21,187.50.00) will be distributed to all Allegedly Aggrieved Employees on a pro rata basis during the PAGA Period. (Treglio Decl. ¶14).

|  | Settlement Amount |
|---|---|
| Settlement Amount | $175,000.00 |
| Attorney's Fees and Costs | $57,750.00 |
| Administrator | $15,000.00 Subject to Court approval |
| Total PAGA Penalties: | $84,750.00 |
| 75% to LWDA | $63,562.50 |
| 25% to Allegedly Aggrieved Employees Members | $21,187.50 |

### B. Payment and the Notice

Defendant shall fully fund the Gross Settlement Amount by transmitting the funds to the Administrator no later than thirty (30) days after the Effective Date. Within fourteen (14) days after Defendant funds the Gross Settlement Amount, the Administrator will mail checks for all Individual PAGA Payments, the LWDA PAGA Payment, the Administration Expenses Payment, Plaintiff Enhancement Payment, and the PAGA Counsel Expenses Payment. Disbursement of the PAGA Counsel Litigation Expenses Payment shall not precede disbursement of Individual PAGA Payments. The Administrator will issue checks for the Individual PAGA Payments and send them to the Aggrieved Employees via First Class U.S. Mail, postage prepaid. The face of each check

shall prominently state the date (not less than 180 days after the date of mailing) when the check will be voided. The Administrator will cancel all checks not cashed by the void date. Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database. (Settlement Agreement ¶4.3, 4.4, 4.4.1) (Treglio Decl. ¶16).

### C. Settlement Allocation to the Allegedly Aggrieved Employees

As noted, twenty-five percent (25%) of the PAGA penalties will be allocated to the Allegedly Aggrieved Employees. The portion to each of the Allegedly Aggrieved Employee will be treated as non-wages since these are civil penalties and reported by the Settlement Administrator by law.

### D. The Release

The California Supreme Court has explained that a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004…is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding." *Arias*, 46 Cal. 4th at 985-986.

The release in the Settlement Agreement narrowly binds the PAGA Settlement Group Members for civil penalty claims brought in the Action, as follows:

> 31. "Release by Aggrieved Employees" means All Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the facts stated in the Operative Complaint and the PAGA Notice concerning alleged violations of the California Labor Code and the California Industrial Welfare Commission Wage Orders during the PAGA Period for alleged: failure to pay all minimum wages, failure to pay overtime compensation, failure to provide compliant rest periods to and/or pay missed rest break premiums, failure to provide meal periods and/or pay missed meal period premiums, failure to pay all wages owed, failure to provide complete and accurate wage statements, unfair business practice violations, and to indemnify employees for necessary business expenditures incurred in discharge of duties, in violation of Labor Code sections 200-203, 204, 206.5, 210, 226, 226.3, 226.7, 246 510, 512, 515, 1174,1174.5, 1182.12, 1193.6, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, and IWC Wage Order No. 9-2001.

The release in the Settlement Agreement is narrowly related to the claims alleged in the Complaint. The release is therefore proper and reasonable.

### VI. The Settlement is Fair and Reasonable and Warrants Court Approval

In 2016, PAGA was amended to require the Court to "review and approve any settlement of any civil action filed pursuant to this part." (Labor Code §2699(1)(2).) The amendment also required that the "proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." As such, the Settlement and this Motion have been concurrently submitted to the LWDA in accordance with this section. (Treglio Decl. ¶17.)

### A. Evaluation of the PAGA Settlement

Although PAGA and the legislative history do not require a Court to analyze a PAGA settlement in comparison to the "value" of the claims, the penalties obtained are not only reasonable but serve as an overwhelmingly successful resolution in favor of the PAGA Settlement Group Members and the State of California.

A representative settlement is presumed fair where: (1) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) (and) counsel is experienced in similar litigation. *Dunk v. Ford Motor Company* (1996) 48 Cal.App. 4th 1794, 1802. A court may also consider relevant factors such as the strength of the plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, [and] the presence of a governmental participant. *Officers of Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1995) 688 F.2d. 615, 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, supra, 48 Cal.App.4th at 1801. Moreover, the trial court has broad powers to determine whether a proposed [representative action] settlement is fair. *Mallick v. Superior Court* (1979) 89 Cal.App. 3d. 434.

Plaintiff's theory centers around Defendant's numerous violations against Plaintiff and the Allegedly Aggrieved Employees including failing to pay all wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failing to pay all overtime wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failing to provide meal periods and pay meal period premiums;

failing to provide paid rest periods and pay missed rest period premiums; failing to pay all wages owed in a timely manner; failing to pay all wages owed upon termination and failing to provide complete/accurate wage statements. Defendant maintains data for all approximate 2,213 Allegedly Aggrieved Employees. (Treglio Decl. ¶18).

Plaintiff sought PAGA penalties alleging that Defendant failed to comply with or provide the Allegedly Aggrieved Employees with compensation or penalties as required by state law, including claims and potential claims for penalties recoverable under PAGA concerning wages, including failing to pay all wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failing to pay all overtime wages owed for time spent in bag checks, and traveling from the front door of each warehouse to the workstation; failing to provide meal periods and pay meal period premiums; failing to provide paid rest periods and pay missed rest period premiums; failing to pay all wages owed in a timely manner; failing to pay all wages owed upon termination and failing to provide complete/accurate wage statements. Defendant vehemently opposed the claims, arguing that Plaintiff and the Allegedly Aggrieved Employees were properly compensated. Thus, Plaintiff valued the PAGA claims at $2,833,500. (Treglio Decl. ¶19).

As the Court noted in its Denial of Plaintiff's Motion for Class Certification, there are numerous issues involving the manageability of these claims, and the fundamental question of whether or not time spent in security checkpoints or walking through a workplace was compensable time. (ECF Nos. 89 and 91). In addition, during the pendency of the action, the California Supreme Court held in *Huerta v. CSI Electrical Contractors* (2024) 15 Cal.5th 908, that while time spent in security lines can be compensable time, time spent in a parking lot, or walking from the front door to a clock-in station (which encompassed Plaintiff's claims) was not. And in fact, Defendant's evidence submitted with it's Opposition to Class Certification (ECF 71) indicates that the time spent in security lines was minimal, at best. (Treglio Decl. ¶20)

As a result, Plaintiff and her counsel determined that prevailing on the PAGA claims, particularly in light of the *Huerta* decision, was unlikely. Moreover, as stated in Plaintiff's Motion for Class Certification, the policies and practices at issue in this matter ended shortly after Plaintiff

submitted her PAGA notification. Thus, even if the Court were to award penalties, it would be limited to the time before the filing of the Complaint. (Treglio Decl. ¶21)

Based on the information provided both formally and informally, Plaintiff determined that during the effective PAGA period, there was a total of 72,088 pay periods at issue, for a total PAGA penalties of $7,208,800 per violation. However, taking into account the Court's Ruling on Class Certification, and on the California Court's ruling in *Huerta*, Plaintiff believes that the present settlement of $175,000, representing 2.4% of the total exposure for these claims is fair and reasonable. (Treglio Decl. ¶22)

As Magistrate Boone noted in approving a PAGA settlement representing 2.2% of the total value of the PAGA claims, *Connelly v. Starbucks Corporation* (E.D. Cal., Sept. 29, 2023, No. 1:21-CV-00746-SAB) 2023 WL 6387077, at *7, PAGA settlements with lower value can be approved where, as here, other benefits to the Aggrieved Employees were made. And here, Defendant modified its timekeeping procedures to allow Plaintiff and the other Aggrieved Employees to clock-in as soon as they walk into the facility. (See ECF 65-4, ¶8). (Treglio Decl. ¶23)

This result is positive and favorable to the State, which will receive $63,562.50 and for the Allegedly Aggrieved Employees, who will collectively receive $21,187.50. The Allegedly Aggrieved Employees will receive, on average $9.57 per aggrieved employee, with Allegedly Aggrieved Employees who worked more during the PAGA Period receiving a greater share, which is similar to but in most instances better than a settlement/judgment on a class-wide basis. (Treglio Decl. ¶24)

### B. Discounting Penalties for Purposes of Settlement

First, Defendant has always disputed that Plaintiff would prevail on liability claiming that Plaintiff and the Allegedly Aggrieved Employees were properly compensated. Defendants deny any wrongdoing and liability arising from the claims alleged.

The impact that the novel COVID-19 virus has had on businesses across the country is apparent and is on virtually every news channel in America. Unemployment rates have skyrocketed to levels similar to the Great Depression and most economists believe that Americans have not yet felt the true impact of COVID-19 on Americans. Defendant has suffered a great degree of economic harm as with most businesses.

This is a take it or leave it case – the Court could rule that Plaintiff and the Allegedly Aggrieved Employees were properly compensated. Under these circumstances although very unlikely to impossible, Plaintiff and the Allegedly Aggrieved Employees would not recover anything. The downside risk is apparent, and any judgment obtained through litigation would require not only substantial investment in attorney time and litigation costs but also the risk of serious and lengthy appeals, which Plaintiff's counsel weighed greatly when negotiating a resolution of this claim.

### VII. The Attorney's Fees and Costs should be Awarded

For the efforts and the risk undertaken in obtaining a common fund non-reversionary settlement that benefits the LWDA and the Allegedly Aggrieved Employees, the Parties allocated $57,750 or 33% of the Settlement Amount to Plaintiff's Counsel for reasonable attorney's fees and $7,500.00 costs and expenses subject to the Court's approval. The fees are warranted by law and are well within reason given the extraordinary results.

### VIII. Submission to the LWDA

As set forth in the Treglio Decl. at ¶17, the settlement and this motion are concurrently being submitted to the LWDA in accordance with Labor Code § 2699(1)(2). The proof of electronic submission is attached as Exhibit "C" to the Treglio Declaration.

### IX. The Settlement Administrator

Simpluris, Inc. will serve as the Settlement Administrator, and will be responsible for processing the settlement payments and providing notice to the Allegedly Aggrieved Employees. The Settlement Agreement authorized the payment administration costs subject to Court approval (Settlement Agreement ¶ 7.1).

### X. Conclusion

In light of the foregoing, Plaintiff respectfully requests that the Court approve the parties Settlement Agreement attached as Exhibit B to the Treglio Declaration so that Simpluris, Inc. may begin administering the settlement in accordance with the terms of the Agreement.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AND ENTRY OF JUDGMENT

12

Dated: December 12, 2024

Respectfully,

POTTER HANDY, LLP

By: /s/ James M. Treglio
    James M. Treglio

*Attorneys for Plaintiff Briana Valencia, in his capacity as Private Attorney General Representative*

# PROOF OF SERVICE
**VALENCIA V. VF OUTDOOR, LLC, ET AL.**
Case No.: 20STCV24579

I, the undersigned, am over the age of eighteen years and am resident of San Diego County, California; I am not a party to the above-entitled action; my business address is 100 Pine St., Ste 1250, San Francisco, CA 94111.

On December 12, 2024, I served the following document(s):

1. **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AND ENTRY OF JUDGMENT;**
2. **DECLARATION OF JAMES M. TREGLIO; and**
3. **[PROPOSED] JUDGMENT.**

Addressed to:

LONNIE D. GIAMELA, SBN 228435
lgiamela@fisherphillips.com
LALONNIE V. GRAY, SBN 336999
lgray@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071

☐ <u>BY USPS MAIL:</u> I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Diego, California.
☐ <u>BY FACSIMILE:</u> In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.
☐ <u>BY OVERNITE EXPRESS:</u> I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box at San Diego, California.
☐ <u>BY PERSONAL SERVICE:</u> I caused said documents to be personally served on all listed recipients via Ace Attorney Services.
X <u>BY ELECTRONIC MAIL TRANSMISSION:</u> I caused the listed documents to be electronically filed and subsequently emailed to the recipient(s).

Executed on December 12, 2024 from San Diego, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

                                                                                                  /s/ James M. Treglio
                                                                                                   James M. Treglio