1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   BRIANA VALENCIA, an individual,          No.  1:20-cv-01795-KES-SKO

12                  Plaintiff,

13        v.                                  ORDER DENYING MOTION FOR
                                              APPROVAL OF PAGA SETTLEMENT
14   VF OUTDOOR, a California limited         WITHOUT PREJUDICE
     liability corporation,
15
                   Defendant.
16                                            (Doc. 109)

17

18         On December 11, 2024, plaintiff Briana Valencia filed an unopposed motion for judicial

19   approval of her settlement with defendant VF Outdoor, LLC, ("VF Outdoor") of her California

20   Private Attorneys General Act of 2004, Cal. Labor Code § 2698 *et seq.* ("PAGA") (West 2016),

21   claims in this action.[1]  Doc. 109 ("Mot.").  As addressed below, Valencia fails to provide

22
     _____

23   [1] The version of PAGA in effect prior to July 1, 2024 applies in this case.  The current version of
     PAGA, effective since July 1, 2024, states that "the amendments made to this section by the act
24   adding this subdivision shall apply to a civil action brought on or after June 19, 2024."  Cal. Lab.
     Code § 2699(v)(1) (West 2024).  This action was originally filed on August 27, 2019, so the
25   Court must apply the version of PAGA that was in effect from June 27, 2016 to June 30, 2024.
     *See Anderson v. Safe Streets USA, LLC*, No. 2:18-cv-00323-KJM-JDP, 2024 WL 4826446, at *5
26   (E.D. Cal. Nov. 19, 2024) (applying prior version of PAGA to case that was filed before 2024
     amendments); *Morel v. HNTB Corp.*, No.: 22-cv-00408-AJB-AHG, 2025 WL 242084, at *18
27   n.11 (S.D. Cal. Jan. 17, 2025) (same).  From this point forward, all citations are to the version of
     PAGA in effect from June 27, 2016 to June 30, 2024.
28
                                               1

1    sufficient explanation of, or support for, the facts and assumptions on which the proposed

2    settlement is based.  Valencia's motion also contains factual discrepancies and appears to be

3    inconsistent in certain respects with the parties' settlement agreement.  On this record, the Court

4    cannot determine whether the settlement is fair, reasonable, and accurate.  Accordingly, the Court

5    denies the motion without prejudice.

6    **I.    Background**

7        Defendant VF Outdoor is an apparel and footwear company that owns numerous clothing

8    brands such as Vans, North Face, Dickies, and Jansport.  Doc. 71-4 ¶ 2.  VF Outdoor has four

9    distribution centers in California which are independently managed, and each employs many

10   hourly, non-exempt employees.  *Id.* ¶¶ 3–5.  Plaintiff Briana Valencia is an hourly, non-exempt

11   employee at VF Outdoor's warehouse in Visalia, California.  Doc. 65-4 ¶ 2.

12       As required by PAGA, on June 20, 2019, Valencia provided notice to VF Outdoor and to

13   the California Labor & Workforce Development Agency ("LWDA"), the agency charged with

14   enforcing the relevant provisions of the California Labor Code, that she intended to sue based on

15   VF Outdoor's alleged violations.  Mot. at 10; Doc. 109-1 ("Treglio Decl.") ¶¶ 4, 17; Doc. 109-2

16   at 15–33.  On August 27, 2019, Valencia filed this putative class and representative action in

17   Alameda County Superior Court, asserting various state law causes of action.  Doc. 1-1.

18       Valencia alleges that each of VF Outdoor's four distribution centers required all hourly,

19   non-exempt employees to go through a security check and then walk to their assigned

20   workstations before they could "clock in" for work.  Doc. 1-1 ("Operative Compl.") ¶¶ 24–26.

21   Then, whenever those employees left the distribution centers, after finishing their shifts or to take

22   a meal or rest period, they were required to "clock out" at their workstations and go through the

23   security check again before leaving the distribution center.  *Id.*  Valencia's claims are based on

24   her assertion that VF Outdoor was required to pay employees for the time spent going through the

25   security checks.  *Id.* ¶¶ 24–26, 71–140.  Valencia asserts causes of action for: (1) failure to pay

26   minimum wages in violation of California Labor Code §§ 1194, 1197, and 1198; (2) failure to

27   pay overtime compensation in violation of California Labor Code §§ 510, 1194, and 1198;

28   (3) failure to provide meal periods in violation of California Labor Code §§ 226.7, 512, and 1198;

(4) failure to provide rest periods in violation of California Labor Code §§ 226.7 and 1198;

(5) failure to provide accurate wage statements in violation of California Labor Code §§ 226 and 1198; (6) failure to pay wages owed in a timely manner in violation of California Labor Code § 204; (7) unfair business practices in violation of California Business & Professions Code § 17200, *et seq.*; and (8) penalties under PAGA. *See* Doc. 1-1 at ¶¶ 71–157. Each claim arises from the uncompensated time that employees spent going through the security check. *See id.*

On October 28, 2019, VF Outdoor removed the action to the United States District Court for the Northern District of California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).[2]  Doc. 1. The action was subsequently transferred to this Court. Doc. 41. Thereafter, the Court denied class certification twice. Doc. 64 ("First F&R"); Doc. 68 ("First Order Adopting"); Doc. 89 ("Second F&R"); Doc. 91 ("Second Order Adopting").[3]

Although no class was certified, Valencia is able to maintain her PAGA claim as a representative of the State of California and to seek civil penalties pursuant to PAGA. *See id.* at 6–10; *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435–36 (9th Cir. 2015) ("As the state's proxy, an employee-plaintiff may obtain civil penalties for violations committed against absent employees, Cal. Lab. Code § 2699(g)(1), just as the state could if it brought an enforcement action directly."). Nearly two years after the last denial of her motion for class certification, the parties entered into a settlement agreement in this action. Doc. 107. Valencia provided the required notice of settlement to the LWDA. Doc. 109-2, Ex. C, at 32–33.

Valencia now moves for judicial approval of the settlement, Doc. 109 ("Mot."), as required by PAGA, Cal. Lab. Code § 2699(l)(2). On January 16, 2024, the Court took the motion

---

[2]  Although this Court never certified a class, the Court retained jurisdiction under 28 U.S.C. § 1332(d)(2). "If [a] putative class action was properly removed to begin with, the subsequent denial of Rule 23 class certification does not divest the district court of jurisdiction. The case remains removed and is not to be remanded to state court." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Industrial & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089 (9th Cir. 2010).

[3]  Valencia petitioned to appeal the second order denying class certification, Doc. 91, pursuant to Federal Rule of Civil Procedure 23(f), but the Ninth Circuit denied the petition. Docs. 92, 94.

1    under submission.  Doc. 110.

2    **II.    The Proposed PAGA Settlement**

3        The parties' settlement agreement provides for a non-reversionary settlement fund of

4    $175,000, which Valencia asserts would cover 72,088 pay periods and affect 2,213 employees.[4]

5    Mot. at 16; Treglio Decl. ¶ 22.  Those 72,088 pay periods occurred between June 20, 2018, and

6    the date of the settlement, November 19, 2024.  Doc. 109-2, Ex. B ("Settlement Agreement")

7    ¶ 1.19 (defining "PAGA period" as "the period from June 20, 2018 to the date this Agreement is

8    fully executed").  Valencia calculated that VF Outdoor's total potential liability on the PAGA

9    claims is $7,208,800 by multiplying the number of pay periods by a $100 penalty.  *See* Mot. at

10   16; Doc. 109-1 ("Treglio Decl.") ¶ 22.  Valencia asserts that the settlement fund of $175,000 thus

11   represents approximately 2.4% of the total civil penalties that might have been assessed if the

12   case had proceeded to trial and resulted in a judgment favorable to Valencia.  *Id.*  In addition to

13   this monetary benefit to the LWDA and the aggrieved employees, Valencia contends that VF

14   Outdoor "modified its timekeeping procedures to allow Plaintiff and the other Aggrieved

15   Employees to clock-in as soon as they walk into the facility," thus avoiding any of the alleged

16   labor law violations in the future.  Mot. at 16; *id.* ¶ 23.

17       From this settlement fund, Valencia requests $57,750 for attorneys' fees, $7,500 for

18   litigation expenses, $10,000 for a plaintiff enhancement payment to Valencia, and $15,000 for the

19   settlement administrator.  Mot. at 12; Doc. 109-2, Ex. B ("Settlement") ¶ 3.2.  This leaves

20   remaining PAGA penalties of $84,750.  *Id.*  The settlement allocates seventy-five percent of those

21   penalties, $63,562.50, to the LWDA and twenty-five percent of those penalties, $21,187.50, to the

22   aggrieved employees.  *Id.*

23       The settlement operates as a release of the aggrieved employees' PAGA claims and is

24   binding on both the LWDA and the aggrieved employees.  Mot. at 13; Settlement ¶ 51.  The

25   release states that it applies to "claims for PAGA penalties that were alleged, or reasonably could

26   ─────────────────────────────

27   [4]  As explained below, the motion repeatedly states that there are 72,088 pay periods at issue (*see* Doc. 109 at 11, 16; Treglio Decl. ¶ 22), but the settlement agreement states that there are 193,000 pay periods at issue (Settlement Agreement ¶¶ 4.1, 8).  Valencia does not explain this

28   discrepancy.

1    have been alleged, based on the facts stated in the Operative Complaint and the PAGA Notice."

2    *Id.*

3    **III.    Legal Standard**

4        "The California legislature enacted PAGA because of inadequate financing and staffing to

5    enforce state labor laws." *Baumann v. Chase Inv. Serv. Corp.*, 747 F.3d 1117, 1120 (9th Cir.

6    2014) (citing 2003 Cal. Stat. Ch. 906, §§ 1–2).  To compensate for this enforcement deficit,

7    PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against

8    his or her employer for Labor Code violations committed against the employee and fellow

9    employees, with most of the proceeds of that litigation going to the state." *Sakkab v. Luxottica*

10    *Retail N.A., Inc.*, 803 F.3d 425, 429 (9th Cir. 2015) (quoting *Iskanian v. CLS Transp. Los*

11    *Angeles, LLC*, 59 Cal. 4th 348, 360 (Cal. 2014)).  "A plaintiff suing under PAGA 'does so as the

12    proxy or agent of the state's labor law enforcement agencies.'"  *Perez v. All Ag, Inc.*, 1:18-cv-

13    00927-DAD-EPG, 2021 WL 3129602, at *3 (E.D. Cal. July 23, 2021) (quoting *Arias*, 46 Cal. 4th

14    at 986)).  "Accordingly, a judgment in a PAGA action 'binds all those, *including nonparty*

15    *aggrieved employees*, who would be bound by a judgment in an action brought by the

16    government.'"  *Id.* (emphasis added).

17        A plaintiff who prevails in a PAGA action is entitled to collect civil penalties of "one

18    hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and

19    two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent

20    violation," unless the Labor Code provision violated specifically provides for a different penalty.

21    Cal. Lab. Code § 2699(f)(2).

22        PAGA imposes several requirements on plaintiffs.  First, the plaintiff must notify the

23    LWDA and the employer of the violations alleged to have been committed before suing, Cal.

24    Lab. Code § 2699.3(a)(1)(A), and notify the LWDA of the settlement after settling, Cal. Lab.

25    Code § 2699(l)(2).  Second, after prevailing in or settling the action, the plaintiff must distribute

26    seventy-five percent of the civil penalties recovered to the LWDA and twenty-five percent to the

27    aggrieved employees.  Cal. Lab. Code § 2699(i).

28        The trial court must review and approve any PAGA settlement.  Cal. Lab. Code

1  § 2699(l)(2).  While "there is no binding authority identifying the proper standard of review of

2  PAGA settlements to be employed by the court," the LWDA has provided guidance as to the

3  standard of review:

> [W]hen a PAGA claim is settled, the relief provided for under the
> PAGA [must] be genuine and meaningful, consistent with the
> underlying purpose of the statute to benefit the public and, in the
> context of a class action, the court [must] evaluate whether the
> settlement meets the standards of being "fundamentally fair,
> reasonable, and adequate" with reference to the public policies
> underlying the PAGA.

8  *Perez*, 2021 WL 3129602, at *4 (quoting *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-

9  EMC (N.D. Cal. Jul. 29, 2016), Doc. 736 ("LWDA Comments")).  The "fundamentally fair,

10  adequate and reasonable" standard is routinely employed by courts reviewing class action

11  settlements.  *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

12  688 F.2d 615, 625 (9th Cir. 1982).  However, a reviewing court must take account of the fact that

13  a PAGA settlement is "not a class action [settlement], and PAGA claims are intended to serve a

14  decidedly different purpose—namely to protect the public rather than for the benefit of private

15  parties."  *Tenorio v. Gallard*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 4747949, at *2 (E.D. Cal.

16  Sept. 30, 2019).

17      Numerous district courts have adopted the LWDA's proposed standard, and this Court

18  does the same.  *See, e.g.*, *Ayoub v. Harry Winston, Inc.*, No. 21-cv-01599-JST, 2022 WL

19  17995543, at *2 (N.D. Cal. Dec. 29, 2022); *Gibson v. Swift Transp. Co. of Ariz., LLC*, No. 5:20-

20  cv-00318-ODW, 2021 WL 3511203, at *2 (C.D. Cal. Aug. 10, 2021); *Diaz v. United States

21  Parcel Serv., Inc.*, No. 1:22-cv-00246-CDB, 2023 WL 8622325, at *8 (E.D. Cal. Dec. 13, 2023).

22  Accordingly, the Court will approve a settlement upon a showing that "(1) the statutory

23  requirements set forth by PAGA have been satisfied, and (2) the settlement agreement is fair,

24  reasonable, and adequate in view of PAGA's public policy goals."  *Gibson*, 2021 WL 3511203, at

25  *2.  Evaluating the fairness, reasonableness, and adequacy of the PAGA settlement "may involve

26  a balancing of several factors including but not limited to the following: the strength of plaintiffs'

27  claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered

28  in settlement; the extent of discovery completed, [] the stage of the proceedings; and the

experience and views of counsel." *Perez*, 2021 WL 3129602, at *4 n.6 (citing *Officers for Justice*, 688 F.2d at 625); *see Ayoub*, 2022 WL 17995543, at *2–4 (same).

**IV.    Discussion and Analysis**

**A.  Review of the PAGA Settlement**

The Court denies the motion because, although Valencia's filing satisfies PAGA's statutory requirements, she has not provided sufficient information to enable the Court to determine whether the settlement is reasonable.

**i.    Statutory Requirements**

Valencia satisfied the two primary statutory requirements of PAGA.  First, PAGA requires that notice be provided to the LWDA before filing the action and after finalizing a settlement with the opposing party.  Cal. Lab. Code. §§ 2699(l)(2), 2699.3(a)(1)–(2) (mandating that an employee file notice and wait at least sixty-five days to hear back from LWDA before filing suit).  Valencia filed the required notices with the LWDA and did not receive a response from the LWDA on either of them.  *See* Treglio Decl. ¶¶ 4, 17; Doc. 109-2 at 15–33.

Second, PAGA requires that seventy-five percent of the civil penalties must be allocated to the LWDA and twenty-five percent allocated to aggrieved employees. Cal. Labor Code § 2699(i).  The settlement allocates the funds accordingly.  Settlement ¶ 3.2.

**ii.    Fairness, Reasonableness, and Adequacy**

"[T]o determine whether a proposed settlement agreement is reasonable, courts consider the maximum amount of money that the defendant would have to pay if the plaintiff prevailed on the merits of the claim, discounted by the risk of adjudication." *Ayoub*, 2022 WL 20243404, at *2 (citing *Gilmore v. McMillan-Hendryx Inc.*, No. 1:20-CV-00483-HBK, 2021 WL 6335208, at *1 (E.D. Cal. Dec. 29, 2021)).  To make that determination, "[t]he plaintiff seeking settlement approval must explain how they derived the maximum exposure and discount figures." *Id.* (citing *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)).

Valencia calculates VF Outdoor's total potential liability at $7,208,800.  Mot. at 16.  She reaches this figure by multiplying the 72,088 pay periods that she asserts are at issue by a $100

1    penalty. *Id.*; Doc. 109-1 ("Treglio Decl.") ¶ 22.   Valencia contends that the $175,000 settlement

2    is reasonable because, although it represents only 2.4% of VF Outdoor's total potential liability,

3    there were significant risks involved in the litigation and the claims should therefore be

4    discounted, and there were non-monetary benefits to the aggrieved employees because VF

5    Outdoor modified its timekeeping procedures to allow employees to clock in immediately. *See*

6    Mot. at 14–17.

7        There are numerous problems with Valencia's calculations: (1) the number of pay periods

8    used in the calculation appears to be inconsistent with the number of pay periods covered by the

9    settlement agreement; (2) Valencia multiplies the number of pay periods by a $100 penalty when

10   PAGA and other provisions of the Labor Code authorize a higher penalty for "subsequent

11   violation[s]";  (3) Valencia fails to explain how many "subsequent violation[s]" there were; and

12   (4) Valencia does not "stack" the penalties in order to calculate the total potential liability,

13   although she argued in her complaint that such stacking was warranted.  On top of these problems

14   with her calculations, Valencia asserts that the Court should approve the settlement because VF

15   Outdoors "modified its timekeeping procedures to allow Plaintiff and the other Aggrieved

16   Employees to clock-in as soon as they walk in[,]" Mot. at 16, but the settlement agreement does

17   not reference any such agreement and Valencia fails to show that VF Outdoor modified its

18   timekeeping procedures at all four of its facilities.  Each issue is discussed in turn.

19       As for the first inconsistency, Valencia asserts throughout her motion that there are 72,088

20   pay periods at issue, Doc. 109 at 11, 16; Treglio Decl. ¶ 22, but the settlement agreement states

21   that there are 193,000 pay periods at issue, Settlement Agreement ¶¶ 4.1, 8.  Valencia does not

22   explain this discrepancy.  It may well be that she estimates that there were violations only during

23   72,088 pay periods rather than all 193,000 pay periods, but she does not state that or explain why

24   that would be the case, and the Court cannot simply make that assumption.  *Cf. Gibson v. Swift*

25   *Transp. Co. of Ariz., LLC*, 2021 WL 3511203, at *3–4 (C.D. Cal. Aug. 10, 2021) (denying

26   motion for approval of PAGA settlement for failure to explain the estimated violation rate).  Any

27   future settlement approval motion should explain this discrepancy, as well as the basis for any

28

8

1    violation rate. *See id.*

2        Second, except where provided otherwise, PAGA imposes penalties of "one hundred

3    dollars ($100) for each aggrieved employee per pay period for the initial violation and two

4    hundred dollars ($200) for each aggrieved employee per pay period for each subsequent

5    violation." Cal. Labor Code § 2699(f)(2). California courts have defined "subsequent violation"

6    to be any violation that occurs after the defendant is notified of the "initial violation." *Amaral v.*

7    *Cintas Corp. No. 2*, 78 Cal. Rptr. 3d 572, 613–14 (Cal. Ct. App. 2008); *see Steenhuyse v. UBS*

8    *Fin. Serv., Inc.*, 317 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2018) ("California law is clear that a

9    'subsequent violation' level applies only to violations after the employer is on notice that its

10    continued conduct is unlawful."). Because the PAGA period began on June 20, 2018, *see*

11    Settlement Agreement ¶ 1.19, and the defendants were notified on June 20, 2019 that their

12    practices allegedly violated the California Labor Code, *see* Treglio Decl. ¶ 4, "subsequent

13    violation[s]" after June 20, 2019 would presumably result in penalties of $200 per employee per

14    pay period. A simple $100 penalty per violation calculation would therefore be inappropriate if

15    there continued to be violations after June 20, 2019. *See Gibson*, 2021 WL 3511203, at *3–4

16    (disapproving PAGA settlement for failure to apply correct penalty amounts).

17        Relatedly, Valencia does not explain why the penalty amounts contained at § 2699(f)(2) –

18    $100 and $200 – would be the applicable penalty amounts in this case. Those penalty amounts

19    apply only when the provision of the code that is violated by an employer does not "specifically

20    provide[]" for a different amount. *See* Cal. Lab. Code § 2699(f)(2); *Gibson*, 2021 WL 3511203,

21    at *4. Yet Valencia alleges certain Labor Code violations that do specifically provide for

22    different amounts. For example, California Labor Code § 1197.1(a) – which provides the basis

23    for Valencia's minimum wage claim, *see* Doc. 1-1 ¶¶ 71–80 – provides for a civil penalty of $100

24    for an initial, intentional violation and $250 for any subsequent violation, regardless of whether

25    the subsequent violation was intentional. Valencia "should address the effect of [the penalty

26    amounts contained in the specific provisions giving rise to her claims] in [any] future settlement

27    approval motions and adjust the calculations if and as necessary." *Gibson*, 2021 WL 3511203, at

28

*4.

Third, Valencia's motion fails to explain how many of the pay periods at issue occurred before June 20, 2019, and how many of the pay periods at issue occurred after June 20, 2019, the date she notified VF Outdoors of her allegations. *See generally* Mot. The Court cannot simply count the number of pay periods between each date because those pay periods were worked by 2,213 employees, and some employees may not have worked during every pay period that occurred during the PAGA period. Because Valencia fails to identify how many of the pay periods occurred before and after June 20, 2019, the Court cannot assess how many "subsequent violation[s]" may have occurred.

Fourth, district courts regularly require a plaintiff to take "stacking" into account when calculating a defendant's total potential liability. *See Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, at *9 (N.D. Cal. Nov. 16, 2021) (citing cases). In other words, in calculating a defendant's total potential liability, some courts have assumed that PAGA provides for a civil penalty for each distinct violation, and if there are multiple distinct violations during each pay period, a court may "stack" those civil penalties awards in calculating the total potential liability. *See Snow v. United Parcel Services, Inc.*, No. EDCV 20-025 PSG (AFMx), 2020 WL 1638250, *3 (C.D. Cal April 1, 2020).

Here, Valencia alleges six distinct violations of the California Labor Code: failure to pay minimum wages, Doc. 1-1 ¶¶ 71–80; failure to pay overtime wages, *id.* 81–90; failure to provide meal periods, *id.* ¶¶ 91–110; failure to provide rest periods, *id.* ¶¶ 111–121; failure to provide accurate wage statements, *id.* ¶¶ 122–131; and failure to pay wages in a timely manner, *id.* ¶¶ 132–140. Thus, if each violation occurred to each employee during each pay period, there could potentially be up to six civil penalties per employee per pay period. Valencia argued in her complaint that she could stack the PAGA penalties, *see* Doc. 1-1 at 41 ¶ 154 (citing *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 WL 2373372, at *59 n.77 (C.D. Cal. June 22, 2012)), but she does not address that possibility in her motion. Valencia should address the potential stacking issue, and whether such stacking of penalties should apply, when

1 | calculating VF Outdoor's total potential liability.

2 |       In sum, Valencia does not provide enough information to support her calculation of VF

3 | Outdoor's total potential liability, and she does not provide sufficient detail on, or support for, the

4 | assumptions on which the settlement amount is based.  Valencia's motion also appears to be

5 | inconsistent with the assertions in the settlement agreement regarding the applicable number of

6 | pay periods.  As Valencia acknowledges, the settlement is low relative to the total potential

7 | liability she calculated.  *See* Mot. at 16.  If there are 193,000 pay periods at issue as referenced in

8 | the settlement agreement and the potential applicable penalties are higher than as asserted by

9 | Valencia, then the settlement amount would be even lower relative to the total potential liability.

10 | *See O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016) (disapproving

11 | PAGA settlement worth 0.1% of the defendant's total potential liability).  To the extent Valencia

12 | argues that the settlement amount should be heavily discounted given the risks of litigating the

13 | claims, she must provide sufficient information to assess the value of those claims and the

14 | associated litigation risks.  *See Gibson v. Swift Transp. Co. of Ariz., LLC*, 2021 WL 3511203

15 | (C.D. Cal. Aug. 10, 2021) (disapproving PAGA settlement for failure to provide correct figures

16 | and calculations); *Ayoub*, 2022 WL 20243404, at *2–3 (same); *K.H.*, 2018 WL 3585142, at *5

17 | (same); *Gilmore*, 2021 WL 6335208, at *1 (same).

18 |       Valencia also argues that the Court should uphold the settlement, even though it is low,

19 | because VF Outdoor "modified its timekeeping procedures to allow Plaintiff and the other

20 | Aggrieved Employees to clock-in as soon as they walk into the facility."  Doc. 109 at 16.  Courts

21 | have upheld low PAGA settlements "where, among other things, the settlement taken as a whole

22 | vindicates employee rights and may have a deterrent effect on the defendant employer and

23 | others" by providing prospective relief.  *Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, at *10

24 | (N.D. Cal. June 30, 2016) (approving low PAGA settlement in light of "robust programmatic

25 | relief" that "remediate[d] the alleged violations"); *Ramirez v. Benito Valley Farms, LLC*, 2017

26 | WL 3670794, at *5–6 (N.D. Cal. Aug. 25, 2017) (noting the value of injunctive relief in a

27 | settlement that was 4.5% of the total potential recovery).

28 |       But Valencia fails to adequately support her assertion that VF Outdoor has corrected its

1   timekeeping procedures prospectively and resolved the issue identified by Valencia.  As evidence

2   that VF Outdoor has modified its timekeeping procedures, Valencia cites to her declaration,

3   which states that, at some unidentified point, VF Outdoor's Visalia warehouse began to allow

4   employees to clock in as soon as they walked inside of that facility.  Doc. 65-4 ¶ 8.  Valencia's

5   motion seems to imply that all aggrieved employees benefitted from this modification to the

6   timekeeping procedures, but the aggrieved employees are spread across four distribution centers.

7   Doc. 71-4 ¶¶ 3–5.  Her declaration, Doc. 65-4 ¶ 8, does not support the assertion that the

8   aggrieved employees at all four of VF Outdoor's distribution centers are now allowed to clock in

9   as soon as they walk into their respective facilities.  Furthermore, the settlement agreement does

10  not make any reference to such a change in policy.  *See generally* Settlement Agreement.

11  Valencia has not sufficiently shown any lasting policy change by VF Outdoor due to this

12  litigation.  In any future settlement approval motion, Valencia should explain whether VF

13  Outdoor has truly modified its procedures at all four warehouses, as well as any requirement for it

14  to maintain those modifications going forward.

15  **IV.    Conclusion and Order**

16        In seeking approval of a PAGA settlement, a plaintiff "should ensure that all relevant

17  figures, assumptions, and calculations are included, so that the Court can follow those same steps

18  with its own calculator and arrive at the same amounts set forth in the moving papers."  *Gibson*,

19  2021 WL 3511203, at *5.  Valencia did not do so.  Accordingly, the motion is DENIED without

20  prejudice.

21

22  IT IS SO ORDERED.

23    Dated:   February 18, 2025

        _____
        UNITED STATES DISTRICT JUDGE

24

25

26

27

28